UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

══════════════════════════════════════

ERVIN CUMMINGS,

                          Plaintiff,

            -v.-                                          9:14-CV-0111
                                                         (LEK/TWD)
CLINTON COUNTY LEGISLATURE,
COMMISSION OF CORRECTION,
DAVE FAURO, CLINTON COUNTY
SHERIFF'S DEPT., CLINTON COUNTY
JAIL, LARRY BEDARD,

                          Defendants.

══════════════════════════════════════

APPEARANCES:

ERVIN CUMMINGS, 20130647
Plaintiff pro se
Clinton County Jail
25 McCarthy Drive
Plattsburgh, NY 12901

THÉRÈSE WILEY DANCKS,
UNITED STATES MAGISTRATE JUDGE

## ORDER AND REPORT-RECOMMENDATION

        This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been

referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Ervin

Cummings objects to a number of conditions at the Clinton County Jail.  (Dkt. No. 2.)  Currently

pending before the Court is Plaintiff's motion for leave to proceed *in forma pauperis*.  (Dkt. No. 8.)

## I.      SUMMARY OF PLAINTIFF'S COMPLAINT

        Plaintiff is a pretrial detainee at Clinton County Jail.  (Dkt. No. 2 at 3.)  Plaintiff alleges that

he is allergic to soy, seafood, and mushrooms and that he got sick at the facility "by eating a lunch

tray [to which] I was allergic." *Id*. Plaintiff alleges that he is required to work in the facility's kitchen every day, receiving only a peanut butter and jelly sandwich as payment. *Id*. He alleges that if he refuses to work, he will be locked up in his cell, lose good time credits, and be charged $25.00. *Id*. Plaintiff alleges that the facility does not provide free legal copies. *Id*. at 5. He alleges that there are no religious services in the facility. *Id*. He alleges that the commissary 'profiteers' from inmates by price gouging. *Id*. Plaintiff alleges that the kitchen serves nutritionally inadequate food in very small portions. *Id*. This, he alleges, forces inmates to buy overpriced food from the commissary. *Id*. Plaintiff alleges that on January 3, 2014, he was served a chicken patty that was breaded with a soy byproduct that "could've caused me to have a life threat[en]ing reaction." *Id*. at 6. This incident causes him anxiety about what he is served at meal time. *Id*. Plaintiff alleges that "every day" he receives soy or fish from the kitchen. *Id*. at 7.

Plaintiff names the Clinton County Legislature, the New York Commission of Correction, Sheriff Dave Fauro, the Clinton County Sheriff's Department, the Clinton County Jail, and Nutritional Services Supervisor Larry Bedard as Defendants. (Dkt. No. 2 at 1-2.) He requests $900,000 in damages. *Id*. at 4.

## II.     PLAINTIFF'S *IN FORMA PAUPERIS* APPLICATION

Plaintiff has applied to proceed *in forma pauperis*. (Dkt. No. 8.) A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 8), I find that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is

granted.[1]

## III.    REVIEW OF PLAINTIFF'S COMPLAINT UNDER 28 U.S.C. § 1915A

28 U.S.C. § 1915A (2006) requires the court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" to determine whether any claims are frivolous or malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A (a-b) (2006). The term "prisoner" includes pretrial detainees.  28 U.S.C. § 1915A (c) (2006).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  Courts are "obligated to construe a

---

[1]     Plaintiff should note that although the application to proceed *in forma pauperis* has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

3

*pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When screening a complaint, the court has the duty to show liberality towards pro se litigants. *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

### A.    Claims Against Clinton County Sheriff's Department and Clinton County Jail

Plaintiff has named the Clinton County Sheriff's Department and the Clinton County Jail as Defendants. (Dkt. No. 2 at 2.) "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); *see also Jandres v. Nassau Cnty. Med. Ctr.*, No. 12-CV-3132 (JS) (GRB), 2012 U.S. Dist. LEXIS 105181, at *10, 2012 WL 3064175, at *3 (E.D.N.Y. Jul. 25, 2012) ("both the Sheriff's Department and the Jail are administrative arms of Nassau County, without legal identities. Accordingly, they lack the capacity to be sued . . . . ); *Jenkins v. Onondaga Cnty. Sheriff's Dep't*, No. 5:12-CV-855 (GTS/ATB), 2012 U.S. Dist. LEXIS 131860, at *7, 2012 WL 4491134, at *2 (N.D.N.Y. June 28, 2012) ("under New York law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued"); *Barreto v. Suffolk Cnty.*, No. 10-CV-

4

0028 (JS)(AKT), 2010 U.S. Dist. LEXIS 4218, at *7, 2010 WL 301949, at *2 (E.D.N.Y. Jan. 20, 2010) (finding the Suffolk County Sheriff's Department to be an arm of Suffolk County, without a separate legal identity and incapable of being sued).[2]  Thus, Plaintiff's claims against the Clinton County Sheriff's Department and the Clinton County Jail, which have no legal, separate identity apart from Clinton County, are not plausible.  Therefore, I recommend that the Court dismiss Plaintiff's claims against the Clinton County Sheriff's Department and the Clinton County Jail.

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Id*. (citation omitted).  Here, better pleading would not cure the defect with Plaintiff's claims against the Clinton County Sheriff's Department and the Clinton County Jail.  Therefore, I recommend that the Court dismiss these claims without leave to amend.

## B.    Claims Against Clinton County Legislature

Plaintiff names the Clinton County Legislature as a Defendant.  (Dkt. No. 2 at 1.)  Unlike law enforcement agencies and jails, county legislatures are not merely "administrative arms" of municipalities.  *Nassau Cnty. Emp. "L" v. Cnty. of Nassau*, 345 F. Supp. 2d 293, 298 (E.D.N.Y. 2004).  Accordingly, county legislatures can be sued.  *Id*.  However, in order to state a civil rights claim against a municipality, a plaintiff must plead facts plausibly suggesting that "(1) an official

---

[2]    The Court will provide Plaintiff with a copy of all of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

policy or custom . . . (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees. *Dorsett-Felicelli, Inc. v. Cnty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978), *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986), and *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Here, Plaintiff has not pleaded any facts plausibly suggesting that the actions of which he complains were the result of an official policy or custom of the Clinton County Legislature. Therefore, I recommend that the Court dismiss the claims against the Clinton County Legislature with leave to amend.

### C.    Claims Against Dave Fauro and Larry Bedard

Plaintiff lists Sheriff Dave Fauro and Nutritional Services Supervisor Larry Bedard as Defendants. (Dkt. No. 2 at 2.) However, he mentions these individuals only in the list of parties. *Id*. The complaint alleges no further action or inaction on behalf of either Defendant.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff

must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v.*

*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere linkage

to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat

superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk*

*Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)

(per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per

curiam). In other words, supervisory officials may not be held liable merely because they held a

position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted). Rather,

supervisory personnel may be considered personally involved if they: (1) directly participated in the

violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3)

created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been

grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate

indifference to the rights of inmates by failing to act on information indicating that the violation was

occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[3]

Here, the complaint does not allege facts plausibly suggesting personal involvement by

either Defendant Fauro or Defendant Bedard. Therefore, I recommend that the Court dismiss the

---

[3]        In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the
underlying constitutional claim is a claim of intentional discrimination, a supervisory official's
liability must be judged by the official's purpose rather than the official's knowledge of
subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing
*Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined
that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531,
543-44 (S.D.N.Y. 2009) (collecting cases). The Second Circuit itself has noted that "*Iqbal* has . . .
engendered conflict within our Circuit about the continuing vitality of the supervisory liability test
set forth in *Colon*." *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012). The Second
Circuit declined to address the issue in *Reynolds*, however, and has not addressed it since that time.
I will assume for the purposes of this motion that *Colon* remains good law.

claims against these Defendants with leave to amend.

**D.    Claims Against Commission of Correction**

Plaintiff has named the New York Commission of Correction as a Defendant.  (Dkt. No. 2 at 2.)  The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).  "Agencies of the state . . . are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest."  *Santiago v. New York State Dep't. of Corr. Serv.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (citations omitted).  Thus, suits against stage agencies for money damages are barred by the Eleventh Amendment.  The Commission of Correction is a stage agency.  *Robinson v. N.Y. State Dep't of Corr. Servs.*, No. 9:08-CV-0911 (TJM/GJD), 2009 U.S. Dist. LEXIS 92294, at *26-27, 2009 WL 3246818, at *9 (N.D.N.Y. Sept. 30, 2009).  Accordingly, Plaintiff cannot maintain a suit against the Commission of Correction.  Therefore, I recommend that the Court dismiss the claims against the Commission of Correction without leave to amend.

8

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's *in forma pauperis* application (Dkt. No. 8) **is GRANTED**; and it is further

**RECOMMENDED** that the Court dismiss the complaint with leave to amend the claims against the Clinton County Legislature, Dave Fauro, and Larry Bedard but without leave to amend the claims against the Commission of Correction, the Clinton County Sheriff's Department, or the Clinton County Jail; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Jandres v. Nassau Cnty. Med. Ctr.*, No. 12-CV-3132 (JS) (GRB), 2012 U.S. Dist. LEXIS 105181, 2012 WL 3064175 (E.D.N.Y. Jul. 25, 2012); *Jenkins v. Onondaga Cnty. Sheriff's Dep't*, No. 5:12-CV-855 (GTS/ATB), 2012 U.S. Dist. LEXIS 131860, 2012 WL 4491134 (N.D.N.Y. June 28, 2012); *Barreto v. Suffolk Cnty.*, No. 10-CV-0028 (JS)(AKT), 2010 U.S. Dist. LEXIS 4218, 2010 WL 301949 (E.D.N.Y. Jan. 20, 2010); and *Robinson v. N.Y. State Dep't of Corr. Servs.*, No. 9:08-CV-0911 (TJM/GJD), 2009 U.S. Dist. LEXIS 92294, 2009 WL 3246818 (N.D.N.Y. Sept. 30, 2009); and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form (Dkt. No. 11), and notify the official that this action has been filed and that Plaintiff is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk provide a copy of Plaintiff's inmate authorization form (Dkt. No. 11) to the Financial Deputy of the Clerk's Office.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written

objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.


Dated: August 13, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2010 WL 301949
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Juarez E. BARRETO, Plaintiff,

v.

SUFFOLK COUNTY, Suffolk County Sheriff's
Department, John and Jane Doe, Defendants.

No. 10-CV-0028 (JS)(AKT).  |  Jan. 20, 2010.

**Attorneys and Law Firms**

Juarez F. Barreto, Fishkill, NY, pro se.

No Appearance for Defendants.

**Opinion**

### MEMORANDUM & ORDER

SEYBERT, District Judge.

**\*1** Juarez F. Barreto ("Plaintiff"), a frequent filer in
this Court, proceeding *pro se,* commenced this action
(10-CV-0028) against John and Jane Does, the County
of Suffolk, and the Suffolk County Sheriff's Department
("Defendants"). [1] Plaintiff alleges that Defendants violated
his constitutional rights when he was assaulted by another
inmate. Accompanying Plaintiff's Complaint is a request to
proceed *in forma pauperis* and a request for appointment
of counsel. Upon review of Plaintiff's application, the Court
GRANTS Plaintiff *in forma pauperis* status and DENIES
his motion for appointment of counsel. *See* 28 U.S.C. §
1915. However, for the reasons discussed below, Plaintiff's
Complaint is dismissed against Suffolk County Sheriff's
Department and Suffolk County.

### BACKGROUND

Plaintiff alleges that on October 18, 2009, while incarcerated
at the Suffolk County Correctional Facility, he was "attacked
from behind without his knowledge by another inmate," and
alleges that the incident could have been avoided. (Compl.¶
2.) Plaintiff describes that he was rushed to Stony Brook
Hospital where he received medical care and subsequently
underwent surgery. Plaintiff alleges that later in the month
he was taken to Peconic Bay Medical Center where he
received treatment for a bladder problem. (Compl.¶ 26.)
In the remainder of Plaintiff's nearly twenty-five page
handwritten Complaint, he alleges he received inadequate
medical treatment. Plaintiff seeks, among other things, a full
investigation and a total of eight million dollars.

### DISCUSSION

#### I. *In Forma Pauperis Application*

Upon review of Plaintiff's declaration in support of his
application to proceed *in forma pauperis,* the Court
determines that the Plaintiff's financial status qualifies him to
commence this action without prepayment of the filing fees.
*See* 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's request to
proceed *in forma pauperis* is GRANTED.

#### II. *Application of 28 U.S.C. § 1915*

On one hand, Section 1915 of Title 28 requires a district court
to dismiss an *in forma pauperis* complaint if the action is
frivolous or malicious; fails to state a claim on which relief
may be granted; or seeks monetary relief against a defendant
who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)
(B) (i-iii). The Court is required to dismiss the action as soon
as it makes such a determination. *See id.* Furthermore, Section
1915(e), as amended by the Prison Litigation Reform Act
of 1995, applies to both prisoner and non-prisoner *in forma
pauperis* actions. *See Burns v. Goodwill Indus. of Greater
New York,* No. 01-CV-11311, 2002 U.S. Dist. LEXIS 11875,
at *5-6, 2002 WL 1431704 (S.D.N.Y. July 1, 2002).*

Rule 8 of the Federal Rules of Civil Procedure provides,
in relevant part, that a complaint "shall contain ... a short
and plain statement of the claim showing that the pleader
is entitled to relief," and "[e]ach averment of a pleading
shall be simple, concise, and direct." Fed.R.Civ.P. 8. The
Second Circuit has held that the purpose of this Rule
is to provide an adverse party with notice of the claims
asserted and to limit the burden imposed on both courts and
litigants by unnecessarily verbose and incoherent pleadings.
*See Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988).
In that vein, the Supreme Court has held that complaints
containing only vague or conclusory accusations and no

specific facts regarding the alleged wrongdoing do not allow defendants to frame an intelligent defense and are therefore subject to dismissal. *See Neitzke v. Williams,* 490 U.S. 319, 325, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987). All complaints, including *pro se* complaints, are required to contain at least "some minimum level of factual support for their claims."*Megna v. United States Dep't of the Navy,* 317 F.Supp.2d 191, 192 (E.D.N.Y.2004).

**\*2** When a complaint fails to comply with the requirements of Rule 8, district courts have the authority to dismiss the complaint *sua sponte. See Salahuddin,* 861 F.2d at 42;*see also Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 364 (2d Cir.2000) (holding that district courts have the authority to dismiss frivolous actions *sua sponte*"in order to preserve scarce judicial resources."). It is axiomatic that the Court is required to read the Plaintiff's *pro se* submissions liberally and to liberally construe a *pro se* plaintiff's papers " 'to raise the strongest arguments that they suggest.' " *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (*quoting Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). "Dismissal, however, is [proper] ... for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any is well disguised." *Salahuddin,* 861 F.2d at 42.

### III. *Section 1983*

Plaintiff does not overtly specify the nature of his lawsuit other than alleging that Defendants violated Plaintiff's rights. Liberally construing Plaintiff's claim as one pursuant to 42 U.S.C. § 1983, that section provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege: (1) that the defendant acted under color of state law; and (2) that as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights or privileges as secured by the Constitution or laws of the United States. *See Am. Mfr. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Giordano v. City of New York,* 274 F.3d 740, 750 (2d Cir.2001).

Furthermore, when bringing a Section 1983 action against a municipality, a plaintiff is required to plead three elements: " '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.' " *Zahra v. Southold,* 48 F.3d 674, 685 (2d Cir.1995) (*quoting Batista v. Rodriquez,* 702 F.2d 393, 397 (2d Cir.1983)). "Local governing bodies ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### A. *Claims Against the Suffolk County Sheriff's Department*

A local police department, such as the Suffolk County Sheriff's Department, "is considered an administrative arm of the County, without a legal identity separate and apart from the municipality and, therefore, without the capacity to sue or be sued."*Aguilera v. County of Nassau,* 425 F.Supp.2d 320, 323 (E.D.N.Y. March 27, 2006) (citations omitted). Plaintiff's claims against the Suffolk County Sheriff's Department are thus more appropriately raised against defendant Suffolk County. Accordingly, Plaintiff's claims against the Suffolk County Sheriff's Department are DISMISSED with prejudice.

### B. *Claims against Suffolk County*

**\*3** As noted above, when bringing a Section 1983 claim against a municipality, a plaintiff must plead an official policy or custom that caused the plaintiff's constitutional rights to be violated. Here, Plaintiff fails to allege any facts to show a municipal policy or custom deprived Plaintiff of a constitutional right. Accordingly, Plaintiff's claims against Suffolk County are DISMISSED.

### C. *John and Jane Doe*

Plaintiff specifically names a variety of individuals in his Complaint but fails to clearly indicate the identities he is seeking to sue in the John and Jane Doe Defendants. The United States Marshal Service will not be able to serve the intended defendants without further information. In *Valentin*

*v. Dinkins,* 121 F.3d 72 (2d. Cir.1997) (per curiam), the Second Circuit made clear that a *pro se* litigant is entitled to assistance from the district court in identifying a defendant. Yet it is not possible for even the Suffolk County Attorneys Office to ascertain the full names of the defendants without more specificity. Accordingly, the Court grants Plaintiff leave to amend his Complaint by February 19, 2010 to provide more information regarding the identities he seeks to sue in the John and Jane Doe Defendants.

## IV. *Appointment of Counsel*

Courts may "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The Court has broad discretion in determining whether appointment of counsel is appropriate. The threshold question is "whether the litigant is able to afford or otherwise obtain counsel." *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994). Once the Court determines that the litigant cannot afford or otherwise obtain counsel, the only constraint on a court's determination to appoint counsel is that "it be 'guided by sound legal principle.' " *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 171-72 (2d Cir.1989) (quoting *Jenkins v. Chemical Bank,* 721 F.2d 876, 879 (2d Cir.1983)). The Second Circuit set forth the guiding legal principles in *Hodge.*

Although Plaintiff satisfies the threshold inquiry regarding financial resources, as evidence by his *in forma pauperis* status, the Court finds that appointment of counsel is not necessary at this time. In doing so the Court finds: (1) Plaintiff has adequately and competently set forth his position in his Complaint; (2) Plaintiff, quite prolific, is capable of pursuing his lawsuit; and (3) there are no other special reasons to appoint counsel at this time. For these reasons the Motion to Appoint Counsel is DENIED without prejudice.

## V. *Leave to Amend*

When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. *Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir.2002) (*citing Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991). Nevertheless, " '[f]utility' is a valid reason for denying a motion to amend ... where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims." *Pangburn v. Culbertson,* 200 F.3d 65, 70-71 (2d Cir.1999) (citations omitted).

**\*4** However, even with the most liberal reading of the Complaint, the Court finds that the Complaint is completely devoid of any viable cause of action against the Suffolk County Sheriff's Department, and any amendment would therefore be futile. Accordingly, the Court declines to grant leave to amend against this Defendant and the Clerk of Court is ordered to terminate this party.

The Court grants Plaintiff until February 19, 2010 to amend his claims against Suffolk County and the John and Jane Doe Defendants in accordance with this Order. Failure to amend will result in dismissal of the Complaint as against these Defendants with prejudice. Plaintiff is directed that his amended complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Pleadings are to give "fair notice" of a claim and "the grounds upon which it rests" to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (citation omitted); *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *see also Twombly v. Bell,* 425 F.3d 99, 106 (2d Cir.2005) (*quoting Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995)).

Should Plaintiff file an amended complaint, he must set forth the legal basis and factual allegations to support his claims against each defendant, and the relief he is seeking with respect thereto. The allegations must be short, plain, and concise. In addition, Plaintiff is directed to name as proper defendants those individuals who have some personal involvement in the actions he alleges in the amended complaint. The amended complaint must be captioned as an "Amended Complaint" and bear the same docket number as this Order.

### CONCLUSION

Based on the foregoing, it is hereby ORDERED, that Plaintiff's request to proceed *in forma pauperis* is hereby GRANTED; and it is further

ORDERED, that the motion for appointment of counsel is DENIED; and it is further

ORDERED, that the Superintendent of the facility in which Plaintiff is incarcerated forward to the Clerk of the Court a certified copy of the prisoner's trust fund account for the six months immediately preceding this Order, in accordance with Plaintiff's previously submitted authorization form; and it is further

ORDERED, that the agency holding Plaintiff in custody calculate the amounts specified in 28 U.S.C. § 1915(b), deduct those amounts from his prison trust fund account, and disburse them to the Clerk of the United States District Court for the Eastern District of New York; and it is further

ORDERED, that the agency holding Plaintiff in custody shall not deduct more than twenty percent from the prisoner's trust fund account and shall forward the payments to the appropriate courts sequentially if there are multiple fee-related encumbrances, rather than collecting multiple fees at the same time that exceed twenty percent of the prisoner's trust fund account; and it is further

**\*5** ORDERED, that the Clerk of the Court mail a copy of this Order, together with Plaintiff's authorization, to the superintendent of the facility in which Plaintiff is incarcerated and to Plaintiff; and it is further

ORDERED, that the claims against Suffolk County Sheriff's Department, are DISMISSED with prejudice; and it is further

ORDERED, that the claims against Suffolk County and the John and Jane Doe Defendants, are DISMISSED without prejudice and with leave to amend by February 19, 2010.

SO ORDERED.

Footnotes

1    Plaintiff's *pro se* civil cases in this Court alone include: *Barreto v. Massa, et al.,* 05-CV-4857 (E.D.N.Y. filed 10/12/05); *Barreto v. Calahan, et al.,* 05-CV-5023 (E.D.N.Y. filed 10/27/05); *Barreto v. Harvey, et al.,* 05-CV-5365 (E.D.N.Y. filed 11/15/05); *Barreto v. Dennis Dillon, et al.,* 05-CV-5401 (E.D.N.Y. filed 11/16/05); *Barreto v. Plotkin, et al.,* 05-CV-5675 (E.D.N.Y. filed 12/05/05); *Barreto v. Eggers, et al.,* 09-CV-4059 (E.D.N.Y. filed 09/08/09).

                                        © 2014 Thomson Reuters. No claim to original U.S. Government Works.

 © 2014 Thomson Reuters. No claim to original U.S. Government Works.                    4

2012 WL 3064175
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

William JANDRES, Plaintiff,
v.
NASSAU COUNTY MEDICAL CENTER,
Nassau County Sheriff's Dept., Nassau
County Correctional Facility, Armor
Correctional Health Inc., Defendants.

No. 12–CV–3132 (JS)(GRB). | July 25, 2012.

**Attorneys and Law Firms**

William Jandres, East Meadow, NY, pro se.

No Appearances for Defendants.

**Opinion**

***ORDER***

SEYBERT, District Judge.

**\*1** On June 21, 2012, *pro se* plaintiff William Jandres ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 1983 alleging the violation of his civil rights by the defendants, the Nassau County Medical Center ("NCMC"), the Nassau County Sheriff's Dep't. (the "Sheriff's Department"), the Nassau County Correctional Facility (the "Jail"), and Armor Correctional Health, Inc. ("Armor") (collectively, the "Defendants"), accompanied by an application to proceed *in forma pauperis.* Upon review of the Plaintiff's declaration in support of his application to proceed *in forma pauperis,* the Court finds that Plaintiff's financial status qualifies him to commence this action without prepayment of the $350.00 filing fee. 28 U.S.C. §§ 1914(a); 1915(a)(1).

Accordingly, Plaintiff's application to proceed *in forma pauperis* is GRANTED. However, for the reasons set forth below, the Complaint *is sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) unless Plaintiff files an Amended Complaint as set forth below.

***BACKGROUND***

Plaintiff's brief, handwritten Complaint, submitted on the Court's Section 1983 complaint form, alleges that, on August 10, 2011, Plaintiff "slipped and fell on the wet floor at E2/ AB Hallway Housing Area" and that there were "no wet floor signs out to warn anybody of the dangers ahead."Compl. at ¶ IV. According to the Complaint, Plaintiff fell "in front of Corrections Officer Mr. Evans Badge # 210," who wrote up an "injury and/or incident report ." *Id.* Plaintiff claims to have sustained "numerous injuries" to his "back, neck, left sholder [sic], and right knee."

Although Plaintiff alleges that "medical failed [to provide] adequate medical treatment," he does not allege that he requested such treatment. Rather, Plaintiff has annexed to his Complaint a series of "Sick Call Request" forms signed by Plaintiff and allegedly submitted between August 10, 2011 and June 10, 2012, all requesting medical treatment for his claimed injuries allegedly sustained on August 10, 2011. [1] For example, the first such form, dated August 10, 2011, states that Plaintiff "fell in the hallway ... [and] injured my wrist, shoulder & back, as well as hit my head."Accordingly, Plaintiff states that he "feels it would be appropriate to receive exrays [sic] & , if necessary, MRI(s) ."*See* Sick Call Request Form, dated August 10, 2011, annexed to the Complaint as page 4. The next form, dated August 19, 2011, requests only a "medication renewal—need something better. Still having back pain—pins & needles. Neck & Leg & shoulder also. From the fall that happened on 8/10."*See* Sick Call Request Form, dated August 19, 2011, annexed to the Complaint as page 5. By Sick Call Request Form dated August 26, 2011, Plaintiff asked "can you please help me again since the 10th that I had the accident I have been in pain & it's getting worse."*See* Sick Call Request Form, dated August 26, 2011, annexed to the Complaint as page 6. Apparently, on August 27, 2011, Plaintiff was brought to "medical" but was not seen because, by Sick Call Request dated August 29, 2011, Plaintiff states "you called my down to medical on 8–27–11 on Saturday but I was sent back without being seen. Can you please help me? I have back, shoulder, & leg pain. From when I fell in the hall way on 8/10/2011. *See* Sick Call Request Form, dated August 29, 2011, annexed to the Complaint as page 7. By Sick Call Request dated September 1, 2011, Plaintiff stated "I still need to see a doctor that can help me. I'm still in pain from that fall I had on 8/10/2011. My shoulder, neck and rt knee still hurt. I don't know what to do except keep writing. Please help."*See* Sick Call Request Form, dated September 1, 2011, annexed to the Complaint as page 8. The Sick Call Forms submitted by Plaintiff continue to request medical treatment for his claimed injuries allegedly resulting

from his August 10, 2011 fall. On October 8, 2011, plaintiff acknowledges that he was seen by a "nurse" on September 22, 2011, but continues to request medical treatment from a doctor. *See* Sick Call Request Form, dated October 8, 2011, annexed to the Complaint as page 12. On October 17, 2011, Plaintiff again requests that a doctor diagnose his injuries. *See* Sick Call Request Form, dated October 17, 2011, annexed to the Complaint as page 13. On November 1, 2011, Plaintiff requested that his prescription for "Flexeril" be renewed because it "is helping me a little bit." Plaintiff also again requests that he be seen by a doctor. *See* Sick Call Request Form, dated November 1, 2011, annexed to the Complaint as page 14. On November 13, 2011, Plaintiff yet again asks for medical treatment, including that an MRI be ordered to diagnose his back, shoulder and knee pain. *See* Sick Call Request Form, dated November 13, 2011, annexed to the Complaint as page 5. At some point Plaintiff was apparently examined by two doctors, namely Drs. Lora and Nova, but Plaintiff claims that these doctors are "not doing anything to help me" and, accordingly, Plaintiff requests that he be seen by a doctor other than Lora and Nova. The next relevant form, dated December 11, 2011, reflects that Plaintiff must have been examined and x-rayed because he requests the results of the x-ray and requests an MRI if the x-ray does not show anything wrong with him. *See* Sick Call Request Form, dated December 11, 2011, annexed to the Complaint as page 18. On March 20, 2012, Plaintiff continued to complain of neck, left shoulder, right knee and lower back pain and acknowledges that he was seen by the "orthopedic." Plaintiff complains, however, that the orthopedic doctor told him to return in two weeks and that it has now been five weeks since he was first seen by the orthopedic doctor. *See* Sick Call Request Form, dated March 20, 2012, annexed to the Complaint as page 23. On June 6 and June 12, 2012, Plaintiff attributes his injuries to a "car accident and/or the incident"—the August 10, 2011 fall on the wet floor. *See* Sick Call Request Forms, dated June 6 and 12, 2012, annexed to the Complaint as pages 26 and 27.

**\*2** Plaintiff's Complaint describes that his neck, back, right knee and left shoulder have "sharp, chronic pain" and that he experiences "numbness and tingling" as well as a loss of feeling in his hand, causing Plaintiff to drop things. Compl. at ¶ IV.A. As a result, Plaintiff seeks "proper medical treatment, proper diagnoses of my injury's [sic] and proper prescribed medications" as well as monetary compensation in total sum of three hundred and twenty million dollars ($320,000,000.00).

## DISCUSSION

### I. *In Forma Pauperis Application*

Upon review of Plaintiff's declaration in support of his application to proceed *in forma pauperis*, the Court finds that Plaintiff's financial status qualifies him to commence this action without prepayment of the $350.00 filing fee. *See* 28 U.S.C. §§ 1914(a); 1915(a)(1). Accordingly, Plaintiff's application to proceed *in forma pauperis* is GRANTED.

### II. *The Prison Litigation Reform Act*

The Prison Litigation Reform Act, codified at 28 U.S.C. § 1915, requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) (i-iii); 28 U.S.C. § 1915A (a) & (b); *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007). The Court is required to dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A (a).

It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the Plaintiff's *pro se* Complaint liberally, *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *Chavis v. Chappius,* 618 F.3d 162, (2d Cir.2010), and to construe the allegations therein " 'to raise the strongest arguments' " suggested. *Chavis,* 618 F.3d at 170 (quoting *Harris v. City of New York,* 607 F.3d 18, 24 (2d Cir.2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir.2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009)); *see also Jackson v. Birmingham Board of Education,* 544 U.S. 167, 171, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005).

A complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citations omitted). While "detailed factual allegations" are

not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly,* 550 U.S. at 555).

## III. *Section 1983*

**\*3** Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United states ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person action under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."*Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)).Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere."*Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999); *see also Rosa R. v. Connelly,* 889 F.2d 435, 440 (2d Cir.1989). With these standards in mind, the Court must consider the Plaintiff's Section 1983 claims against the Defendants.

### A. *Sheriff's Department and Jail*

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued."*Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002); *see also In re Dayton,* 786 F.Supp.2d 809, 818 (S.D.N.Y.2011); *Hawkins v. Nassau Cnty. Corr. Facility,* 781 F.Supp.2d 107, 109 at n. 1 (E.D.N.Y.2011); *Melendez v. Nassau County,* No. 10–CV–2516 (SJF)(WDW), 2010 WL 3748743, at \*5 (E.D.N.Y. Sept. 17, 2010) (dismissing claims against Nassau County Sheriff's Department because it lacks the capacity to be sued). Here, both the Sheriff's Department and the Jail are administrative arms of Nassau County, without independent legal identities. Accordingly, they lack the capacity to be sued and thus Plaintiff's claims against both the Sheriff's Department and the Jail are **DISMISSED.**

To assert a Section 1983 claim against a municipal entity such as the sheriff's department or county jail, the proper defendant is the municipality itself because there is no *respondeat superior* liability under Section 1983. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To prevail on a Section 1983 claim against a municipality, a plaintiff must show "an injury to a constitutionally protected right ... that ... was caused by a policy or custom of the municipality or by a municipal official 'responsible for establishing final policy.' " *Hartline v. Gallo,* 546 F.3d 95, 103 (2d Cir.2008) (quoting *Skehan v. Village of Mamaroneck,* 465 F.3d 96, 108–109 (2d Cir.2006)*overruled on other grounds by Appel v. Spiridon,* 531 F.3d 138, 140 (2d Cir.2008)); *see also Monell,* 436 U.S. at 690–901, 98 S.Ct. 2018. "Local governing bodies ... may be sued for constitutional deprivations pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell,* 436 U.S. at 690–91 (citations omitted). To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy-making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Sulehria v. City of New York,* 670 F.Supp.2d 288, 320 (S.D.N.Y.2009); *see also Davis,* 224 F.Supp.2d at 478.

**\*4** Here, Plaintiff's Complaint is wholly devoid of allegations to support a plausible municipal liability claim. In an abundance of caution and given Plaintiff's *pro se* status, he is granted leave to file an Amended Complaint against the municipality, Nassau County, in accordance with the requirements set forth above. **Any Amended Complaint shall be filed within thirty (30) days from the date that this Order is served upon the Plaintiff.**

### B. *Armor*

Plaintiff names Armor as a defendant, but does not include any specific allegations against it. Armor is a private company contracted to perform medical services for inmates at the Nassau County Correctional Center.*Cofield v. Armor*

*Correctional Health, Inc.,* No. 12–CV–1394 (SJF) (ETB), 2012 WL 12222326, *2 (E.D.N.Y. Apr. 11, 2012). A private employer may be held liable under Section 1983 for the acts of its employees where the employee acted pursuant to the employer's official policy, or where the private entity employer was jointly engaged with state officials or its conduct is chargeable to the state, or where the employer authorized or participated in the alleged constitutional deprivation. *Id.* (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 323 (2d Cir.2002)). In addition, "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official ...*policy* of some nature caused a constitutional tort.' " *Rojas v. Alexander's Dept. Store, Inc.,* 924 F.2d 406, 408 (2d Cir.1990) (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036 (emphasis in original)) (internal citations omitted); *see also White v. Moylan,* 554 F.Supp.2d 263, 267–68 (D.Conn.2008); *Martin v. Lociccero,* 917 F.Supp. 178, 184 (W.D.N.Y.1995).

Here, Plaintiff has not alleged any facts that could make Armor liable for the actions of its employees. Accordingly, Plaintiff's claims against Armor are dismissed with prejudice **unless he files an Amended Complaint alleging a constitutional violation within thirty (30) days from the date that this Order is served upon him.** Plaintiff shall include facts concerning the acts or omissions of the employee[s] of this Defendant.

## C. *NCMC* [2]

Public benefit corporations, such as the NHCC, are municipal entities for the purpose of Section 1983. *See, e.g. McGrath v. Nassau Health Care Corp.,* 217 F.Supp.2d 319, 330 (E.D.N.Y.2002) ("Public benefit corporations are governmental entities for Section 1983's purposes."); *Estes– El v. New York State Department of Motor Vehicles Office of Administrative Adjudication Traffic Violation Bureau,* No. 95–CV–3434, 1997 WL 342481, at * 4 (S.D.N.Y. June 23, 1997) (holding that the liability of a public benefit corporation under Section 1983 "is governed by the principles set forth in *Monell...* and its progeny."); *Sewell v. New York City Transit Authority,* Nos. 90–CV–3734, 91–CV–1274, 1992 WL 202418, at * 2 (E.D.N.Y. Feb. 10, 1992) ("The 'policy or custom' requirement of *Monell* applies to public corporations as well as to municipalities.... Hence, in order to maintain a cause of action under Section 1983 against [a public benefit corporation], the plaintiff must plead that an impermissible 'policy or custom' of that public benefit corporation denied

him his federal rights."); *see also Dangler v. New York City Off Track Betting Corporation,* 193 F.3d 130, 142– 43 (2d Cir.1999) (applying *Monell* to claims against the OTB, a public benefit corporation). "Accordingly, to maintain actions brought under Section 1983 against public benefit corporations, plaintiffs must show that those corporations maintained a custom or policy that deprived them of a constitutional right." *McGrath,* 917 F.Supp.2d at 330; *see also Connick v. Thompson,* ––– U.S. ––––, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell,* 436 U.S. at 658, 690–1; *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008) (holding that in order to prevail on a Section 1983 claim against a municipal entity or public benefit corporation, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality [or public benefit corporation] caused the constitutional injury.").

*5 Here, as is readily apparent, Plaintiff has not alleged any "injury to a constitutionally protected right ... that ... was caused by a policy or custom of the [NHCC] or by a[n] [NHCC] official responsible for establishing final policy.'" *Hartline v. Gallo,* 546 F.3d 95, 103 (2d Cir.2008) (internal quotations and citation omitted). Accordingly, Plaintiff's claims against the NHCC are dismissed with prejudice unless Plaintiff files an Amended Complaint stating a plausible *Monell* claim against the NHCC within thirty (30) days from the date this Order is served upon him.

## D. *Negligence Claim*

Apart from Plaintiff's Section 1983 claims purporting to allege the deprivation of his Eighth Amendment right to adequate medical treatment, affording the *pro se* Complaint a liberal construction, it appears that Plaintiff also seeks to assert a constitutional claim arising from the alleged dangerous condition that allegedly caused him to fall. Such claim does not implicate a constitutional deprivation. *See, e.g., Carr v. Canty,* No. 10–CV–3829 (BSJ)(KNF), 2011 WL 309667, *2 (S.D.N.Y. Jan. 19, 2011) (" '[C]ourts have held that allegations of wet conditions leading to a slip-and-fall will not support a Section 1983 claim even where ... the plaintiff [ ] alleges that the individual defendants had notice of the wet condition but failed to address it.' "), quoting *Edwards v. City of New York,* No. 08–CV–5787, 2009 WL 2596595, at *3 (S.D.N.Y. Aug. 24, 2009); *Jennings v. Horn,* No. 05–CV–9435, 2007 WL 2265574, at *5 (S.D.N.Y. Aug.

7, 2007) ("[S]lippery prison floors, at best, pose a claim of negligence, which is not actionable under the United States Constitution."); *see also Powers v. Gipson,* No. 04–CV–6883L(P), 2004 WL 2123490 (W.D.N.Y.2004) (*sua sponte* dismissing *in forma pauperis* complaint pursuant to 28 U .S.C. §§ 1915(e)(2)(B) and 1915A, explaining that "[t]he claim that defendants were negligent in failing to clean up the water that caused plaintiff to slip, without more, fails to provide him with a basis for a federal claim, since mere negligence on the part of state officials is not actionable under § 1983); *Nauden v. Maha,* No. 04–CV–0171SC, 2004 WL 1145916, *1 (W.D.N.Y. Apr. 7, 2004) (*sua sponte* dismissing *in forma pauperis* complaint pursuant to 28 U .S.C. §§ 1915(e)(2)(B) and 1915A because "[i]t is abundantly clear to the Court that plaintiff is alleging nothing more than a claim of negligence against the defendants for their alleged creation of a dangerous condition which caused him to slip and fall.").

Here, Plaintiff alleges nothing more than that he slipped and fell on a wet floor, and that there were "no wet floor signs out to warn anybody of the dangers ahead."Compl. at ¶ IV. At best, Plaintiff has alleged a negligence claim, and not a constitutional deprivation. *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (negligence claims do not rise to the level of a constitutional violation). Accordingly, even if asserted against a proper defendant, the Court declines to assert supplemental jurisdiction over this state law claim and Plaintiff may pursue such claim in state court. *See Sylla v. City of New York,* No. 04–CV–5692 (ILG), 2005 WL 3336460, *8 (E.D.N.Y. Dec. 8, 2005) (citing *Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir.1991) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")); *see also Nauden,* 2004 WL 1145916, at *1 ("Plaintiff's avenue for relief for his claims of negligence in state court, not a claim in federal court under 42 U.S.C. § 1983").

## *CONCLUSION*

**\*6** For the reasons set forth above, Plaintiff's application to proceed *in forma pauperis* is granted, but the Complaint is *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b)**unless Plaintiff files an Amended Complaint alleging a viable Section 1983 claim against a proper defendant as set forth above within thirty (30) days from the date that this Order is served upon him.**If Plaintiff fails to timely file an Amended Complaint, the Complaint shall be dismissed with prejudice, judgment shall enter, and the case will be closed. The Amended Complaint must be labeled "Amended Complaint" and must bear docket number 12–CV–3132 (JS) (GRB).

Plaintiff is advised that an Amended Complaint does not simply add to the original Complaint. Once an Amended Complaint is filed, it completely replaces the original. Therefore, it is important for Plaintiff to include all necessary information that was in the original Complaint in the Amended Complaint. The Court will screen any timely filed Amended Complaint pursuant to 28 U.S.C. §§ 1915, 1915A.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

---

Footnotes

1    Plaintiff has also included a Sick Call Request form, dated November 27, 2011, wherein he complains only of a toothache. *See* Sick Call Request Form, dated November 27, 2011, annexed to the Complaint as page 17.

2    NCMC is one of the facilities managed by the Nassau Health Care Corporation ("NHCC"), a public benefit corporation created under New York law, *see*N.Y. Pub. Auth. Law §§ 3400–3420. Accordingly, Plaintiff's claims against NCMC are construed to be claims against NHCC.

---

**End of Document**          © 2014 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4491134
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mrs. Silvia JENKINS, Plaintiff,
v.
ONONDAGA COUNTY SHERIFF'S
DEPARTMENT, Defendant.

No. 5:12–CV–855 (GTS/ATB).  |  June 28, 2012.

**Attorneys and Law Firms**

Silvia Jenkins, pro se.

**Opinion**

**REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** On May 23, 2012, the Clerk sent me the above civil rights complaint, together with an application to proceed *in forma pauperis* (IFP), and a motion for appointment of counsel, filed by *pro se* plaintiff, Silvia Jenkins. (Dkt. Nos.1–3). After reviewing the complaint, I determined that plaintiff met the financial criteria for proceeding IFP, but that her complaint did not state a claim for purposes of 28 U.S.C. § 1915(e)(2)(B)(ii). (Dkt. No. 4).

Rather than recommending dismissal at that time, I granted plaintiff's motion to proceed IFP, for purposes of filing, but ordered plaintiff to file an amended complaint, correcting the deficiencies in the original. *Id.* I allowed plaintiff until June 25, 2012 within which to submit the amended complaint. *Id.* The Clerk of the Court was ordered to send the matter back to me for further review upon submission of an amended complaint or upon expiration of the time for doing so. [1] *Id.* at 7. As of today's date, plaintiff has not filed an amended complaint, nor has she asked for more time to do so, and the Clerk has sent me the matter for further review. For the following reasons, this court finds that plaintiff's complaint does not state a claim and will recommend dismissal of the action without prejudice.

**I.** *Facts*

Although I reviewed the facts in my prior order, I will summarize them again for purposes of clarity in this Recommendation. Plaintiff claims that on April 28, 2012, she was in the "Booking Department" of the "Onondaga County City [sic] Jail" and that a number of Sheriffs violated plaintiff's civil rights by being mentally and physically abusive. (Compl. ¶ 4; Dkt. No. 1 at 2). Plaintiff claims that her clothes were taken away from her, she was strapped down and placed naked in an empty cell, on "Suicide Watch," until she was released the following day. (*Id.;* Dkt. No. 1 at 2–3). The complaint contains three "Causes of Action." (Dkt. No. 1 at 3). Plaintiff claims that her right to privacy was violated, that she suffered "cruel & unusual punishment without ... remorse, and that she was the subject of verbal and written accusations against her in "those log books." Plaintiff seeks a "full investigation" and payment of her medical and psychological expenses as well as "any other damages." (*Id.* at 4).

**II.** *Discussion*

**A. Legal Standard**

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

**\*2** To survive dismissal for failure to state a claim, the action must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

**B. Application**

As I stated in my May 24, 2012 Order, this is not the first time that this plaintiff has made similar accusations. In 2007, plaintiff sued the "Sheriff's Department," alleging that in 2005, she was assaulted by several unnamed sheriff's deputies in the "booking area." *Jenkins v. Sheriffs Dep't,* 5:07–CV–939 (DNH/GJD). On October 2, 2007, Judge David N. Hurd ordered plaintiff to amend her complaint. *Jenkins v. Sheriffs Dep't,* 5:07–CV–939 (N.D.N.Y. Oct. 2, 2007). Plaintiff may not sue a "department," and to the extent that plaintiff was attempting to name the County as a municipality, Judge Hurd found that "in order to establish liability of a municipality for violation of civil or constitutional rights, a plaintiff must allege that the municipality 'has adopted a 'custom' or 'policy' which is the 'moving force' behind the [violation]."*Id.* at 3 (quoting *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (citing *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 689 (1978). A municipality may not be held liable based upon respondeat superior alone. *Id.*

Plaintiff filed an amended complaint in Judge Hurd's action, but plaintiff's amendment did not cure the deficiencies, and Judge Hurd dismissed the action. *Jenkins v. Sheriff's Dep't,* 5:07–CV–939 (N.D.N.Y. Nov. 21, 2007). In his order, dismissing the case, Judge Hurd noted that plaintiff had filed eight other actions [2] in the Northern District of New York since 2005, two of which appeared to be related to the same 2005 incident. *Id.* at 1 n. 1 (citing *Jenkins v. Onondaga Sheriff's Dep't,* 5:05–CV–1457 (FJS/GJD); *Jenkins v. Onondaga Sheriff's Dep't,* 9:06–CV–1092 (TJM/ GHL)). Each of these cases was ultimately dismissed due to plaintiff's failure to submit an amended complaint or plaintiff's failure to prosecute her action. *See also Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 5:06–CV–60 (N.D.N.Y. April 14, 2006; Dkt. No. 4) (FJS/GJD) (complaint

dismissed after plaintiff failed to file an amended complaint as ordered by the court).

In this case, the original complaint failed to name any of the individual deputy sheriff's who allegedly violated her constitutional rights. As plaintiff has been told several times, under New York law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued. *Hayes v. County of Sullivan,* Nos. 07–CV–667; 09–CV–2071, 2012 WL 1129373, at \*24 (S.D.N.Y. March 30, 2012) (citing *inter alia Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Plaintiff may *not* sue the Sheriff's Department. To the extent that the court interpreted plaintiff complaint to name the municipality, [3] an entity that may be sued, plaintiff did not state any policy or custom that would allow Onondaga County to be maintained as a defendant in this action. In my May 24, 2012 order, I stated that unless plaintiff amended her action to name either the individual sheriffs responsible for the alleged violations or asserted a policy or custom sufficient to name Onondaga County as a defendant, the complaint could not continue.

**\*3** Plaintiff has failed to file an amended complaint as she has failed to do in several of her other cases, notwithstanding the court giving her an opportunity to do so. [4] Because she has chosen to ignore the court's order and has failed to submit an amended complaint, the original complaint fails to state a claim, and this court will now recommend dismissal of this action. The court will recommend dismissing the action without prejudice.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the complaint be **DISMISSED WITHOUT PREJUDICE** based upon 28 U.S.C. § 1915(e) (2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.***Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Footnotes

1    I also stated that I would entertain any requests for extension of time.

2    *See also Jenkins v. Commissioner of Social Security Administration,* 5:06–CV–59 (DNH/RFT), *Jenkins v. Emergency Department Upstate University Hospital,* 5:06–CV–60 (FJS/GJD), *Jenkins v. City of Syracuse, et al.,* 5:06–CV–1005 (NAM/GHL), *Jenkins v. Department of Correctional Services, et al.,* 9:06–CV–621 (LEK/GHL), *Jenkins v. Mohawk Correctional Facility, et al,* 9:06–CV–1 167 (NAM/GHL), *Jenkins v. City of Syracuse, et al,* 5:07–CV–930 (NAM/GHL). Plaintiff has brought additional cases in this district since 2007. *See Jenkins v. Murphy,* 5:08–CV–921 (NPM/GHL), *Jenkins v. USA,* 9:09–CV–603 (TJM), *Jenkins v. Syracuse Police Dep't., et al.,* 5:10–CV–1223 (GTS/DEP), *Jenkins v. Rice, et al.,* 5:11–CV–1037 (LEK/ATB).

3    A pro se complaint is interpreted to assert the strongest arguments that it suggests. *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

4    The court notes that plaintiff does understand that she must name individual defendants or properly name the municipality. In *Jenkins v. Syracuse Police Dep't,* No. 5:10–CV–1223 (GTS/DEP), a case that has been served and is still pending, plaintiff did name individual police officers who she believed violated her rights.

---

**End of Document**                                © 2014 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 3246818
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David ROBINSON, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF
CORRECTION SERVICES, et al., Defendants.

No. 9:08–CV–0911.  |  Sept. 30, 2009.

**Attorneys and Law Firms**

David Robinson, pro se.

KRista A. Rock, Assistant Attorney General, for Defendants.

**Opinion**

### DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* civil rights action pursuant to 42 U.S.C. § 1983 was referred to the Hon. Gustave J. Di Bianco, United States Magistrate Judge, for a Report–Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

The Report–Recommendation dated September 8, 2009 recommended that the Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12 be granted. Plaintiff filed objections to the Report–Recommendation arguing only that he did not consent to have his complaint adjudicated by a Magistrate Judge, the Magistrate Judge misconstrued the facts in litigation and the law governing its conduct, and it was the fault of the United States Marshal's service that service was not properly effectuated.

When objections to a magistrate judge's Report–Recommendation are lodged, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."*See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."*Id.*

Having reviewed the record *de novo* and having considered the issues raised in the Plaintiff's objections, this Court has determined to accept and adopt the recommendation of the Magistrate Judge for the reasons stated in the Report–Recommendation.

It is therefore **ORDERED** that Defendants' motion to dismiss is **GRANTED** and the Complaint is **DISMISSED IN ITS ENTIRETY.**

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION

GUSTAVE J. DiBIANCO, United States Magistrate Judge.

This matter has been referred to the undersigned for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff, a former inmate, alleges that defendants delayed plaintiff's access to the United States Mail; assigned him to be double-bunked; subjected him to excessive searches; limited his use of a "warming stove"; harassed him; and refused to address plaintiff's grievances. (Dkt. No. 1 ("Compl.")). Plaintiff claims that defendants' actions violated the First, Fifth, Sixth, Eighth, Ninth, Tenth, and Fourteenth Amendments. Plaintiff cites 42 U.S.C. §§ 1983, 1985, 1986, 1987, and 1988. Plaintiff also claims that defendants have violated 18 U.S.C. §§ 241, 242. [1] Plaintiff seeks injunctive [2] as well as substantial monetary relief.

Presently before the court is defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 41). Plaintiff has filed a response in opposition to the motion. (Dkt. No. 46). For the following reasons, this court recommends that defendants' motion to dismiss be **GRANTED** and the complaint be dismissed in its entirety.

### DISCUSSION

**1.** *Motion to Dismiss*

**\*2** To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *Camarillo v. Carrols Corp.,* 518

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

F.3d 153, 156 (2d Cir.2008) (quoting *inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007)).*See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007)).*See Ashcroft v. Iqbal,* ––– U .S. ––––, 129 S.Ct. 1937, 1949 (May 18, 2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89, 93–94 (2007) (citations omitted).

The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (per curiam). In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) (citing *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989)).

## 2. *Facts*

Plaintiff states that he has nine claims in this action. (Compl. at ¶¶ 112–29). The complaint is comprised of three parts. In the first part, plaintiff gives a generally chronological recounting of the events that are the bases of the alleged constitutional violations. (Compl. at ¶¶ 24–111). In the second part, plaintiff summarizes his nine causes of action. (Compl. at ¶¶ 112–29). The third part of the complaint consists of 52 pages that include copies of his "grievances," legal arguments, and supporting documents for some of his claims. (Dkt. No. 1, *Exhibits* [3]). The court will attempt to discuss the facts separately as to each claim.

### A. Interference with Mail

Plaintiff's first two claims (Compl. at ¶¶ 112–13, 114–15) relate to the handling of his mail. Plaintiff asserts that the New York State Department of Correctional Services ("NYSDOCS"), the Central Office Review Committee ("CORC"), and individual defendants Rivera, Glover, and

Jessen [4] violated plaintiff's rights under the First, Fifth and Fourteenth Amendments. (Compl. at ¶¶ 113, 115).

Plaintiff discusses in detail three instances of problems with his mail, March 16, April 8, and June 5, 2008. (Compl. at ¶¶ 24, 26, 34). Plaintiff alleges that on March 16, 2008, he submitted two items to be mailed, one was legal correspondence, and the other personal correspondence. (Compl. at ¶ 24). Plaintiff alleges that the legal correspondence "was issued to the Postal Service by defendant Glover, the Senior Mail Clerk, on or about March 19, 2008," but that the personal correspondence was returned to plaintiff on March 28, 2008. *Id.* Plaintiff argues that defendant Glover, "unlawfully obstructed/delayed/tampered with plaintiff's correspondence."*Id.* Plaintiff alleges that this conduct interfered with his right to correspond and access to the court. *Id.* Plaintiff states that he submitted a written inquiry, and that defendant Glover responded in writing

> **\*3** admitting that she unlawfully obstructed/delayed/tampered with plaintiff's afore-stated correspondence. Attributing her actions upon DOCS policy of prohibiting prisoner's access to their accounts the day before and the day of prisoner's scheduled commissary date, the busy volume of mail due to the approaching holiday and unintended negligence on her part.

(Compl. at ¶ 25).

Plaintiff states that the second incident occurred on April 8, 2008. (Compl. at ¶ 26). Plaintiff states that he submitted legal correspondence, together with a disbursement form to pay the cost of postage. *Id.* Plaintiff states that this piece of mail was not given to the Postal Service for mailing until April 14, 2008. *Id.* Plaintiff alleges that defendant Glover was responsible for this delay. *Id.* The third occasion was on June 5, 2008. (Compl. at ¶ 34). Plaintiff states that he submitted legal correspondence on June 5, 2008, and on June 6, 2008, the correspondence "was rejected by defendant Glover, per directions of defendant Jessen."*Id.* Plaintiff argues that this was an unlawful rejection of his correspondence. *Id.* at ¶ 35.

In addition to the three incidents detailed above, plaintiff also lists approximately eight other occasions where submission

of his mail to the United States Postal Service was delayed [5]. (Compl. at ¶ 32).

*Id.* Plaintiff submits a number of completed forms titled "Disbursement or Refund Request," which appear to be the forms used by inmates to draw on their available funds to pay for postage. (Dkt. No. 1,*Exhibits* at 4, 6, 8, 11–15) (IAS-**2706** Forms). The forms are largely illegible, but generally seem to confirm that plaintiff submitted these forms with his correspondence to pay for the postage. *Id.*

Plaintiff basically alleges that defendant Glover violated NYSDOCS policy requiring all mail to be processed and delivered to the United States Postal Service "the next day." (Compl. at ¶ 33). Plaintiff claims that defendants were "practicing" a policy, requiring the approval of his disbursement form prior to issuing the inmate any required postage for mail. This policy prevented an inmate who was attempting to purchase postage from accessing his account for three days if he had purchased something from the commissary.(*Id.* at ¶ 30). Plaintiff claims that, as a result of this "practice," his mail was delayed until the IAS-**2708** advance form was approved.

### B. "Double–Bunking"

**\*4** Plaintiff states that his third cause of action is against defendants State Commission on Corrections ("SCOC"), NYSDOCS, Rivera, and Neuwirth. (Compl. at ¶ 116). Plaintiff states that on March 26, 2008, he submitted a request to defendant Supt. Rivera to be moved to a "single" cell. (Compl. at ¶ 37). Plaintiff claims that his assignment to double-bunked cell was unlawful and discriminatory. *Id.*

Plaintiff states that on April 1, 2008, he met with defendant Neuwirth to discuss the double-bunking. (Compl. at ¶ 38). During the conversation, defendant Neuwirth asked plaintiff "for specific statutes prohibiting double-bunking." *Id.* Plaintiff gave a general answer that it was the obligation of the employees of the correctional facility to understand the statutes that govern the policies at the facility. *Id.* Plaintiff states that defendant Neuwirth threatened to give plaintiff a ticket for refusing a direct order.*Id.* Plaintiff claims that he was not refusing a direct order, but needed time research the issue. *Id.* Plaintiff states that defendant Neuwirth then threatened to issue a Misbehavior Report. *Id.*

Plaintiff filed a grievance on May 16, 2008 to complain about defendant Neuwirth's conduct, and about plaintiff's housing situation. (Compl. at ¶ 42). Plaintiff states that his "grievance has not been disposed, unlawfully suppressed."*Id.* at ¶ 50.Plaintiff argues that

> SCOC issued a variance in accordance with the relevant statute of NYCRR, (Double occupancy housing units *originally designated for double occupancy* ), which unlawfully allowed Wallkill to convert 72 units to house two inmates. Wallkill;s [sic] units are not double occupancy units originally designated and constructed for double occupancy, rendering SCOC's variance, void and unlawful on its face.

*Id.* at ¶ 43 (emphasis in original). Plaintiff further argues that these conditions subject "all Wallkill prisoners" to standards that are "below the minimum standards governing other state prisoners."*Id.* at ¶ 48.

### C. Cell Searches

Plaintiff's fourth cause of action is against defendants Rivera, Amado, Jessen, Calender [6], and Scott. (Compl. at ¶ 118). However, in plaintiff's statement of this claim, he includes allegations against defendant Neuwirth.

Plaintiff states that his "living quarters and property" were searched by defendant Scott on March 20 and March 26, 2008. (Compl. at ¶ 52). On March 26, 2008, he asked defendant Amado to provide plaintiff with "copies of the documents that authorized these searches."*Id.* Plaintiff states that on March 29, 2008, he met with defendant Calender, and plaintiff was informed that random searches were selected by computer program. *Id.* Plaintiff stated that he informed defendant Calender that the searches were too frequent, and the policy authorizing them was unlawful. *Id.*

Plaintiff states that his "living quarters and property" were searched again by defendant Scott on May 7, 2008, allegedly authorized by defendant Calender. (Compl. at ¶ 53). Plaintiff states that he filed a grievance, and that the grievance "has not been disposed, unlawfully suppressed."*Id.* Plaintiff states that he witnessed frequent searches of other inmates, and that this issue of "perpetual, harassing searches" was brought up at the Inmate Liaison Committee, which took the issue up with defendants Rivera, Amado, Jessen, and Neuwirth, during the May 29, 2008 meeting. *Id.* at ¶ 54.Plaintiff states that his quarters were also searched on May 20, June 18, June 22, July

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

24, August 6, August 7, and August 13, 2008. (Compl. at ¶ 55).

### D. Warming Stove Privileges

**\*5** Plaintiff's fifth and sixth claims are about three separate revocations of the privilege to use warming stoves. (Compl. at ¶¶ 120–23). The fifth cause of action names defendants Rivera, Amado, Scott, and Calender. *Id.* at 120–21.The sixth cause of action names only defendant Marrero.[7] *Id.* at 122–23.Plaintiff states that Wallkill Correctional Facility allows the use of warming stoves. He argues that "[r]evocation of this privilege, must be in accordance to a constitutionally sound policy, and never be arbitrary or caprious [sic], or administered for the purpose of retaliation or revenge."(Compl. at ¶ 59). Plaintiff challenges the method by which the warming stove privileges were revoked, claiming that defendants' actions did not comply with due process.

Plaintiff states that he first lost his warming stove privileges during January, when the facility revoked the warming stove privilege "of the entire AB Wing 1, 2, 3, arbitrarily depriving 300 prisoners of secured privileges .... " (Compl. at ¶ 65). Plaintiff argues that because defendant Amado "has the overall charge of the security of the facility," his approval of the revocation of privileges "was mandatory." *Id.* at ¶ 66.

Plaintiff states that on June 23, 2008, defendant Calender informed the population of "AB 1" that "use of the stoves would be restricted for at least a week, due to defendant Scott's report that someone put a substance on the supply room door knob ...." (Compl. at ¶ 60). Plaintiff states that he explained to defendant Calender that there was a long "list of suspects" who could have put the substance on the door knob. *Id.* at ¶ 61.Defendant Calender "replied that it is *his practice,* when he cannot identify the individual guilty of misconduct, he punishes the population, as to pressure the population to find and address the 'guilty' individual."[8] *Id.* at ¶ 61–62 (emphasis in original).

Plaintiff states that on the same day that the substance was found on the door knob, an "AB 1 porter, admitted to defendant Scott that he, was the individual who inadvertently, put cleaning substance from his glove on the supply room door knob, when he entered the closet to get a mop head."(Compl. at ¶ 67). Plaintiff states that notwithstanding the porter's admission, the Wallkill staff, "with vindictiveness and no justification" still deprived plaintiff and 100 other prisoners of their stove privilege for (7) days." *Id.*

Plaintiff states that he filed a grievance about the loss of warming stove privileges with defendant Supt. Rivera on June 25, 2008. (Compl. at ¶ 70). Plaintiff alleges that the grievance "was not disposed, unlawfully suppressed." *Id.*

Plaintiff states that the third occasion that he lost his privilege to use a warming stove was between July 29 and August 2, 2008. (Compl. at ¶ 71). Plaintiff alleges that defendant Marrero revoked the use of the stoves because they were not clean. *Id.* Plaintiff states that it is the duty of the "assigned porter" to clean the stoves, and that when the stoves are not cleaned, the policy is to issue a Misbehavior Report. *Id.* Plaintiff argues that instead of issuing a Misbehavior Report to the porter, defendant Marrero unlawfully revoked the privilege to use the stoves. *Id.*

### E. Harassment

**\*6** Plaintiff's seventh cause of action alleges harassment of plaintiff, and names defendants Rivera, Roy, Amado, Holmes, Valuc[9], Marrero, Curfman, Galbally, Heal, Dunham, and Chenneham[10] . (Compl. at ¶ 124).

Plaintiff alleges that on May 5, 2008, defendant Heal approached plaintiff and instructed him to step outside of the mess hall. (Compl. at ¶ 73). Plaintiff alleges that defendant Heal stated that he suspected plaintiff was carrying a weapon on the string of plaintiff's pants. *Id.* Plaintiff showed defendant Heal the string which held a key to plaintiff's room. *Id.* Plaintiff states that defendant Heal conducted a search of plaintiff "before the view of at least (20) prisoners waiting to enter the messhall and the messhall duty Sgt, Burns [sic]."*Id.*Plaintiff argues that once defendant Heal saw that the string on plaintiff's pants held only a key, defendant Heal had no reason to search plaintiff. *Id.* at ¶74.Plaintiff argues that the reason for the search was "to abuse [defendant Heal's] Official Capacity to quench his individual desire to harass/intimidate and retaliate against plaintiff for filing grievances/complaints against his co-workers."*Id.* Plaintiff states that he filed a grievance with defendant Supt. Rivera, but that the "grievance was never disposed, unlawfully suppressed."*Id.*

Plaintiff states that after he filed the grievance regarding the May 5, 2008 search, defendant Heal

> in retaliation conspired with other
> officers (who are soon to be charged),
> by lambasting him with a barrage

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

of threatening, reckless eyeballing and hostile/profane language/jester. Previous documented complaints/ grievances lodged by other prisoners against defendant Heal, in addition to the fact that Heal, reported to work for (3) weeks. With blackened eyes, which were the obvious result of an off duty fight. Clearly exhibits that defendant Heal, lacks a disposition which is conducive to the discharge of his duties of Correction Officer.

(Compl. at ¶ 75). Plaintiff states that he filed an additional grievance complaint on May 16, 2008 with defendants Amado and Roy as to defendant Heal's "conspiracy" with other officers "to harass/intimidate plaintiff in retaliation to grievance submitted by plaintiff."*Id.* at ¶ 78.Plaintiff argues that defendants Amado and Roy "neglected to Prevent these and future acts of retaliation."*Id.* at ¶ 77.

Plaintiff states one instance of retaliation occurred on May 21, 2008 during the 9:30 p.m. count of the inmates. (Compl. at ¶ 79). Defendant Heal conducted the count, and "stopped in front of plaintiff's room, stood there for 30 seconds looking into the room, while writing on a clipboard. Then defendant Dunham, on her "swing" of the count, stopped and stood in front of plaintiff's room, looking in the room for 30 seconds while writing on a clipboard."*Id.* Plaintiff states that he attempted to ask defendant Heal if they could speak, but that defendant Heal "replied in a hostile/ profane manner, get the [expletive] out of here, stop harassing me, before I give you ticket."*Id.* at ¶ 80.Plaintiff then states that he approached defendant Dunham, and asked if there was a problem with his room during the count. *Id.*"Dunham replied are you harassing me. Plaintiff said no more and returned to his room."*Id.* Plaintiff states that he filed a grievance on this issue, but that it was "never disposed, unlawfully suppressed." *Id.* at ¶ 81.

**\*7** Plaintiff states that defendant Heal issued a Misbehavior Report on May 21, 2008 to retaliate against plaintiff for filing the grievance and the May 16, 2008 complaint to defendants Amado and Roy. (Compl. at ¶ 82). Plaintiff states that defendant Dunham signed the Misbehavior Report as a witness. *Id.* Plaintiff argues that defendants Dunham and Heal committed "perjury by falsely, fabricating charges in order to retaliate against plaintiff for filing grievances, and May 16, 2008 complaint."*Id.* Plaintiff alleges that defendant Holmes "approved" the retaliatory Misbehavior Report. *Id.*

Plaintiff states that he was called to defendant Galbally's office on May 23, 2008 to discuss the Misbehavior Report filed by defendant Heal. (Compl. at ¶ 84). Plaintiff stated that the Misbehavior Report should be dismissed as retaliatory. *Id.* Plaintiff argues that defendant Galbally neglected his official duty when he failed to dismiss the Misbehavior Report and commenced a hearing on the Report. *Id.* at ¶ 86 [11] . Plaintiff states that he requested the opportunity to present witnesses, but that defendant Galbally stated that the rules for a Tier I hearing did not afford plaintiff the opportunity to present witnesses, or for the hearing to be recorded. *Id.*

Plaintiff alleges that defendants Heal and Dunham harassed plaintiff while conducting the inmate count, "then conspired to fabricate a fraudulent report to cover-up their improprieties and retaliate."*Id.* Plaintiff argues that defendant Galbally's "affirmation of the fraudulent report affirms his part of the conspiracy by officers."*Id.* at ¶ 87.Plaintiff further argues that since defendants Rivera and Amado were "properly appraised [sic] of the improprieties of their subordinates, [and they] neglected to curtail this unlawfulness affirms that they condone the conspiracy to retaliate."*Id.*

Plaintiff states that he filed a grievance with defendant Rivera on May 24, 2008 regarding the Tier I Disposition, but he received no relief. (Compl. at ¶ 88). Plaintiff argues that defendants Rivera, Amado, Holmes, Galbally, Heal, and Dunham "conspired to harass/intimidate, issue/affirm fraudulent retaliatory misbehavior report, defraud plaintiff's rights to substantive/procedural due process to grieve/ appeal, present evidence in his favor, equal protection, subjecting cruel [sic] and unusual punishment."*Id.*

Plaintiff alleges another instance of harassment that occurred on July 5, 2008, when defendants Heal and Curfman "directed Threatening stares/Gestures upon plaintiff."(Compl. at ¶ 89). Plaintiff states that as he was leaving the mess hall, defendant Curfman "accosted plaintiff, threateningly, screaming with hostility, pull your pants up."*Id.* Plaintiff states that six other Corrections Officers laughed at plaintiff, and that defendant Heal's laughter was the loudest. *Id.* Plaintiff argues that defendant Curfman's behavior on the morning of July 5, 2008 "confirms that he conspired" with defendant Heal.*Id.* Plaintiff argues that defendants Roy and Amado violated plaintiff's civil rights "by their willful Neglect to Prevent, the perpetual campaign to threaten, harass, intimidate plaintiff in retaliation, as substantiated in numerous afore-mentioned grievances, by plaintiff all of which have been WHITE WASHED."*Id.* at ¶ 90.

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

**\*8** Plaintiff next alleges that defendant Curfman harassed plaintiff by implementing *"his own unlawful policy/custom* of arbitrarily prohibiting plaintiff/ Wallkill prisoners from taking rolls, buns, biscuits. i.e. bread [sic] from the messhall."(Compl. at ¶ 91) (emphasis in original). Plaintiff asserts that the Wallkill Facility Guide states that bread may be taken out of the mess hall at the noon and evening meals. *Id.* It is unclear when defendant Curfman allegedly engaged in the enforcement of his policy about the bread.

In the next paragraph, plaintiff states that on July 10, 2008, plaintiff was summoned to defendant Marrero's office for a hearing regarding a grievance about the bread. (Compl. at ¶ 92). Much of this section of plaintiff's complaint references the Ku Klux Klan, and refers to some defendants as "Grand Wizard", "Regional Grand Wizard", or other combinations of defendants' title and Ku Klux Klan references. Plaintiff states, in essence, that the grievance was never resolved. *Id.*

Plaintiff also states that defendant Marrero conducted the grievance hearing, and that in Marrero's opinion, "the fact that no one made any racist remarks, shows that grievance is an unsubstantiated, anger fueled, written document that no court would believe."*Id.* Plaintiff states that another instance of harassment occurred on July 7, 2008 at around 8:00 a.m., while plaintiff walked toward the "P.C. window" in the basement. (Compl. at ¶ 94). Plaintiff states that defendant Chenneham "physically bumped" into plaintiff. *Id.*

Plaintiff states that the next instance of harassment occurred on July 12, 2008 around 12:30 p.m., when he was on the telephone. (Compl. at ¶ 94). Plaintiff states the defendant Valuc "fraudulently stat[ed]" to defendant Scott that plaintiff had his feet on the wall, and that plaintiff should have to paint the wall. *Id.* Plaintiff argues that defendant Valuc has become "the latest Nazi, to abuse his Official Capacity, by cracking the whip of Unlawful Slave Labor, in order to degrade, harasss, and intimidate plaintiff in retaliation."*Id.* Plaintiff argues that the defendants act with "impunity, which fuels their recklessness, to the inevitable point of assaulting plaintiff."*Id.* at ¶ 96.Plaintiff argues that his personal safety is threatened by "the escalating campaign of harassment, intimidation, threats, physical abuse, MUST BE CURTAILED."*Id.* at ¶ 97.

### *F. Grievances*

Plaintiff's eighth cause of action is against defendants CORC, Rivera, Henn, and Scott. This claim includes several allegations about how defendants handled plaintiff's grievances. Plaintiff alleges that defendant Rivera "willfully pervert[ed] state statute [sic] governing Inmate Grievance Program, by unlawfully suppressing all grievances submitted to him by plaintiff."(Compl. at ¶ 98).

Plaintiff states that on June 17, 2008, he submitted to CORC all of the grievances that plaintiff had submitted up until that date (May 5, May 8, May 16, May 16 (complaint), May 21, May 24 (grievance and complaint), and June 8, 2008). (Compl. at ¶ 98). Plaintiff states that defendant CORC rejected the group of documents and returned them to plaintiff. *Id.*

**\*9** Plaintiff states that his copies of correspondence from the CORC and his grievances were stolen by defendant Scott on May [12] 13, 2008. (Compl. at ¶ 100). Plaintiff states that this theft occurred "under the guise of a 'random search' ". *Id.*Plaintiff alleges that Defendants Rivera, Henn, CORC, conspired to willfully deprive plaintiff of his constitutional rights by unlawfully suppressing his grievances. *Id.* at ¶ 101.

### *G. NYSDOCS*

Plaintiff's ninth cause of action names only NYSDOCS. (Compl. at ¶ 128). Plaintiff argues that the policy of electronic monitoring of prisoners' telephone conversations violates plaintiff's federal constitutional and state statutory rights. (Compl. at ¶ 103). Plaintiff also alleges that he was the subject of an investigation, involving electronic surveillance of his telephone conversations. *Id.* at ¶ 104.Plaintiff also makes some claims that there were undercover "agents" and inmate "agents" conspiring to fabricate charges against plaintiff. *Id.* Plaintiff states that, as a result, his spiritual, mental, and physical well-being were in "clear and present danger." *Id.* Plaintiff requested that the court initiate an investigation into the matter. [13] *Id.* at ¶ 105.

### 3. *Eleventh Amendment Immunity*

It is well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir.1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n. 3. This immunity also applies to suits against state agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding that "in the absence of consent a suit in which

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Burnette v. Carothers,* 193 F.3d 52, 57 (2d Cir.1999), *cert. denied,* 531 U.S. 1052 (2000).

However, a state official acting in his official capacity may be sued in a federal forum ***to enjoin conduct*** that violates the federal Constitution, notwithstanding the Eleventh Amendment bar. *Papasan v. Allain,* 478 U.S. 265, 276–77 (1986); *Pennhurst,* 465 U.S. at 102; *Hutto v. Finney,* 437 U.S. 678, 692 (1978). Under *Edelman v. Jordan,* "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan,* 415 U.S. 651, 677 (1974).

NYSDOCS and SCOC are both state agencies. [14] These agencies are entitled to Eleventh Amendment immunity, and thus, the claims against the New York State Department of Correctional Services and the State Commission of Corrections should be dismissed. Additionally, the claims against the remaining defendants in their "official" capacities, should be dismissed to the extent that plaintiff sues them for money damages.

**\*10** This court recommends dismissal of plaintiff's ninth claim, and all other claims against NYSDOCS and SCOC, and the court also recommends dismissal of the claims against the remaining defendants in their official capacities, to the extent that plaintiff seeks money damages. Although the plaintiff's claims for injunctive relief would not necessarily have been barred by the Eleventh Amendment, plaintiff has been released from incarceration, thus, as stated above, any claims for injunctive relief must be dismissed as moot. *Pugh,* 571 F.Supp.2d at 489–90.

### 4. *Service of Process*
The Federal Rules require that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m). The failure to serve a defendant within 120 days of filing the complaint may be a ground for dismissal of the complaint unless good cause is shown for an extension of that time. *Id.* A dismissal may be initiated by motion or *sua sponte* by the court after notice to plaintiff. *Id.* Generally, if the court chooses to dismiss the action against the unserved defendants, the dismissal must be without prejudice. *Id.*

In this case, defendants C.O. Chenneham; Sgt. Calender; Lt. Valuc; Lt. Marrero; and the CORC have not been served with process. As stated above, the CORC may not be named as a defendant in any event, thus, the court will recommend dismissal with prejudice as against the CORC. On December 22, 2008 and February 12, 2009, the Clerk wrote to plaintiff explaining that defendants Marerro, Valuc, and Chenneham had not been served and explaining potential reasons for the failure of service. (Dkt. Nos. 39–Def. Marerro, 40–Defs. Valuc & Chenneham). On March 6, 2009, the summons was returned "unexecuted" as to defendant Calender, and plaintiff was informed that he must notify the Marshal's Service if plaintiff wished any further attempt to serve this defendant. (Dkt. No. 42 at 2).

Plaintiff has taken no further steps to serve these defendants, notwithstanding the court's letters and the Marshal's notice. Thus, this court will recommend dismissal as to defendants Calender, Valuc, Marerro, and Chenneham for failure to serve. [15]

### 5. *Interference with the Mail*
Plaintiff alleges that delays in processing his mail have violated his constitutional rights under the First, Fifth, and Fourteenth Amendments. Under the First Amendment, prisoners have a right "to the free flow of incoming and outgoing mail." *Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir.2006) (citing *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003)). A prisoner's right to receive and send mail may, however, be regulated. *Davidson v. Mann,* 129 F.3d 700, 702 (2d Cir.1997). A regulation affecting an inmate's attempt to send or receive mail "is valid if it is reasonably related to legitimate penological interests." *Rodriguez v. James,* 823 F.2d 8, 12 (2d Cir.1987) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)).

**\*11** "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." [16] *Davis,* 320 F.3d at 351 (citing *Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989); *Washington v. James,* 782 F.2d 1134, 1138–39 (2d Cir.1986); *Davidson v. Scully,* 694 F.2d 50, 53 (2d Cir.1982)). Interference with ***legal*** mail may implicate a prisoner's right to access to the courts as guaranteed by the First and Fourteenth Amendments. *Davis,* 320 F.3d at 351. A denial of access to courts, however, requires an additional finding of "actual injury." *Lewis v.*

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

*Casey,* 518 U.S. 343 (1996). Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials. *Warburton v. Underwood,* 2 F.Supp.2d 306, 312 (W.D.N.Y.1998) (quoting *Lewis v. Casey,* 518 U.S. at 353).

**A. Correspondence Regulations**

In this case, plaintiff alleges only that his mail was delayed pursuant to a practice whereby an inmate is denied "access to his account" for three days while a commissary purchase is processed. Although plaintiff alleges one delay regarding non-legal mail, most of his complaints involve a delay in processing his legal mail. Plaintiff claims that this "practice" violates the DOCS policy requiring all mail to be processed to the postal service "the next day."

The DOCS Directives governing both "general" and "privileged" correspondence outline the procedures required to obtain postage for outgoing mail. DOCS Directive Nos. 4421, § 721.3(a)(3) [17] (privileged), 4422(III)(D) [18] (general). If an inmate has sufficient funds in his inmate account, he may purchase postage for both personal and legal (privileged) correspondence through the sale of stamps in the commissary. DOCS Directive No. 4422(III)(D)(1) (c). In certain circumstances, an inmate may purchase stamps by attaching an IAS–2706 Form to a letter. *Id.* 4422(III)(D)(1) (d). The IAS-*2706* is a form that requests disbursement from an inmate's existing account *if there are sufficient funds.*

An inmate is entitled to a weekly free postage allowance for privileged correspondence. DOCS Directive No. 4421 § 721.3(a)(3) (ii). If an inmate does not have sufficient funds for the purchase of postage, [19] he is entitled to obtain an advance from the facility for a certain amount of postage for *privileged* correspondence, including legal mail by submitting an IAS-*2708* Form with his request. DOCS Directive No. 4421 § 721.3(a)(3)(iv)(a)-(c). Another Directive governs the procedure for obtaining funds when the inmate is in need of photocopying services. DOCS Directive No. 4483(III)(I). This Directive provides that photocopying requests must be accompanied by either an IAS–2706 Form (for disbursements) or an IAS–2708 Form (for advances) . [20] *Id.* The Directive warns that the inmate must receive the requested photocopies within five business days, however "[t]wo day commissary holds, where applicable, might increase the delivery deadline to seven days."*Id.*

**\*12** It appears that, as plaintiff claims, an inmate's request for funds for postage or other disbursements may be delayed when there has been a commissary purchase. Plaintiff submits a completed form dated March 26, 2008 titled "Inmate Accounts," stating that his money was "held for Commissary for 2 days."(Dkt. No. 1,*Exhibits* at 5). The form also states that as soon as plaintiff's money was "released," his postage and disbursement requests were processed immediately. *Id.* Another of plaintiff's exhibits is a letter from defendant Glover, dated March 25, 2008, stating that when she received plaintiff's mailings, he had insufficient funds to cover the postage, and that she was unable to contact plaintiff for him to complete the "advance form for [his] Legal mailing". (Dkt. No. 1,*Exhibits* at 7). The court notes that defendant Glover's letter states that she sent out plaintiff's legal mail in any event, but that there was an error regarding a personal mailing. *Id.* In response to plaintiff's grievance, the Superintendent stated that "[t]he state accounting system that is currently in place prevents an inmate from overspending his account before a commissary buy."(*Id. Exhibits* at 9).

To the extent that plaintiff challenges the Directives regulating how the facility processes mail and the policy of holding an inmate's request for disbursement until his account can be cleared, these regulations are not unreasonable. Holding an inmate's request for funds for a short period of time to make sure that he has sufficient funds to cover the disbursement is reasonably related to legitimate penological interests and the administration of the inmate account system. [21] The delays cited by plaintiff are not excessive, and in themselves do not rise to the level of First Amendment violations.

Plaintiff also alleges that his account was *improperly* labeled as having insufficient funds for postage, when, in fact, he did possess sufficient funds. (Dkt. No. 1,*Memo.* at 2). Plaintiff claims that Defendant Glover "willful[ly] violat[ed]" his rights. However, during the investigation of plaintiff's grievance, defendant Rivera found that "[a]ny delay in the grievant's personal outgoing mail being processed is attributed to human error and no malice by staff can be substantiated."(Dkt. No. 1,*Memo.* at 9). Similarly, the CORC stated that any delay was "inadvertent." *Id.* at 10.An inadvertent or negligent delay in processing plaintiff's mail would not rise to the level of a constitutional violation. [22] *See Daniels v. Williams,* 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983).

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

## B. Access to Courts

Because plaintiff claims that his legal mail was delayed, he also alleges that defendants violated his right to access the courts. (Compl. at ¶¶ 24, 26, 32, 34). Though plaintiff alleges delays, [23] and perhaps inconvenience, he has not alleged *any actual harm* to any legal action, resulting from the alleged delays. Plaintiff has not argued that defendants' conduct resulted in the dismissal of an otherwise meritorious legal claim. Without an actual injury, plaintiff has not stated a claim that can survive this motion to dismiss.*Lewis v. Casey, supra.*Mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation."*Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995) (citing *Jones v. Smith,* 784 F.2d 149, 151–52 (2d Cir.1986)).

 **\*13** Plaintiff does claim that one piece of legal mail "was rejected by defendant Glover", and that the mail was returned to plaintiff. (Compl. at ¶ 35). However, plaintiff does not state that he was ultimately unable to mail that one piece of legal correspondence, and he does *not* allege any harm to a pending action as the result of this alleged "rejection."

Based upon the complaint and the documents attached, plaintiff fails to state a constitutional violation associated with either his right to send and receive mail or his access to courts. Thus, plaintiff's claims relating to the processing of his mail should be dismissed.

## 6. *Double–Bunking*

Plaintiff claims that his assignment to "double-bunked quarters is unlawful/ discriminatory." (Compl. at ¶ 37). Plaintiff is challenging a "variance" [24] issued to Wallkill, allowing the facility to convert single occupancy cells to double occupancy. Plaintiff claims that this variance was unconstitutional, subjecting "all Wallkill prisoners" to standards "below the minimum standards governing other state prisoners."*Id.* at ¶ 48.

The Supreme Court has held that "double celling" [25] is generally permissible under the Eighth and Fourteenth Amendments. *Rhodes v. Chapman,* 452 U.S. 337, 352 (1981). There is no "one man, one cell" principle embodied in the Constitution. *Bell v. Wolfish,* 441 U.S. 520, 542 (1979). However, combined with other adverse conditions, double-celling may amount to an Eighth Amendment violation. *Bolton v. Goord,* 992 F.Supp. 604, 626 (S.D.N.Y.1998). In

order to violate the constitutional prohibition against cruel and unusual punishment, the conditions of confinement must result in an "unquestioned and serious deprivation of basic human needs," and the defendants must have imposed those conditions with "deliberate indifference." *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996) (citing *Wilson v. Seiter,* 475 U.S. 312, 319–20 (1986); *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.1985)).

In *Jones v. Goord,* the court analyzed the double-celling issue at length.*Jones v. Goord,* 435 F.Supp.2d 221 (S.D.N.Y.2006).*Jones* was a class action case in which plaintiffs challenged a double-celling program that was instituted in New York State due to a large increase in prison population.*Jones,* 435 F.Supp.2d at 228. Plaintiffs argued that the practice deprived inmates of the "minimal civilized measure of life's necessities."*Id.* Plaintiffs claimed that New York's double-celling policy violated the Eighth Amendment because of "the general conditions of confinement in double cells, the risk of inmate against inmate violence, injury and disease, and secondhand smoke."*Id.* at 236.The court found that none of the conditions alleged by plaintiffs resulted in constitutional violations, and dismissed the claims.*Id.* at 236–53.

Under DOCS regulations, inmates must consent to being housed in a double cell for more than sixty days, and there exists a screening process, which prevents certain kinds of inmates from being housed together in a double cell. *Jones,* 435 F.Supp.2d at 230–31, 247–49. In this case, plaintiff appears to challenge the policy as a whole, rather than alleging that *he* suffered some hardship or adverse condition. He merely alleges that this "variance" [26] subjected all Wallkill inmates to constitutionally inadequate conditions and cites numbers of bathrooms, toilets, urinals, and showers. (Compl.¶ 48). This conclusory allegation, without any specific claim that plaintiff suffered any deprivation, does not rise to the level of an Eighth Amendment violation. Any claim that defendants violated state law or regulations, without more, does not state a constitutional claim. *Salahuddin v. Coughlin,* 781 F.2d 24, 27 n. 4 (2d Cir.1986). Plaintiff's claim about "double-bunking" does not rise to the level of a constitutional violation and may be dismissed.

## 7. *Cell Searches and Privacy*

 **\*14** Plaintiff claims that his "quarters and property" were subject to an excessive number of searches. Plaintiff claims that defendant Scott searched plaintiff's cell on March 20,

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

March 26, and May 7, 2008. (Compl. at ¶¶ 52–53). Plaintiff alleges that some of these searches were authorized by defendant Calender. *Id.* at ¶ 53.Plaintiff alleges that his cell was searched an additional seven times: May 20, June 18, June 22, July 24, August 6, 7, and 13, 2008. *Id.* at ¶ 55.Plaintiff states that other inmates were similarly searched, and that defendants Rivera, Amado, Jessen, and Neuwirth were advised of the issue at the May 29, 2008 meeting of the Inmate Liaison Committee.*Id.* at ¶ 54.As proof of the excessive nature of these searches, plaintiff argues that while incarcerated at Franklin Correctional Facility for three years, he was subjected to only one random search. *Id.* at ¶ 55.

It is well-settled that the prohibition against unreasonable searches and seizures does not apply to a prison cell. *Hudson v. Palmer,* 468 U.S. 517, 526 (1984. Inmates have no reasonable expectation of privacy in their cells.*Willis v. Artuz,* 301 F.2d 65, 67–69 (2d Cir.2002); *Rodriguez v. McClenning,* 399 F.Supp.2d 228, 239 (S.D.N.Y.2005). In *Rodriguez,* the court held that an inmate has no right to be free from searches of any kind, including those alleged to be "retaliatory." *Id.* (citing cases).

Plaintiff cites all the occasions when his cell was searched and mentions that other inmates suffered from excessive searches. (Compl.¶¶ 53–55). He then states that his claim is substantiated "res ipse loquitur" because he was subjected only to one "random" search in the three years that he was incarcerated at Franklin Correctional Facility. *Id.* ¶ 55.The fact that Wallkill officials choose to search inmates' cells more frequently, even if true, does not change this court's finding. There is no protection from unreasonable searches of one's prison cell. Thus, any cell search claims must be dismissed.

### 8. *Warming Stove and Other Privileges*

Plaintiff's fifth and sixth causes of action are related to three separate occasions when plaintiff's **housing block** lost the privilege to use "warming stoves" in their cells. (Compl. at ¶¶ 59–72). Plaintiff also complains about his loss of the privilege to remove bread products from the mess hall. *Id.* at ¶91.Plaintiff argues that the defendants' policy of punishing the entire housing block when defendants are unable to identify who committed some particular misbehavior is unconstitutional. Plaintiff argues that the deprivation of these privileges must be in accordance with a "constitutionally sound policy," and must not be "arbitrary and capricious"

or retaliatory. Plaintiff is clearly attempting to make a due process argument regarding the denial of these privileges.

Plaintiff cannot make claims on behalf of his "housing block." *See Singleton v. Wulff,* 428 U.S. 106, 114 (1976) (plaintiff cannot assert claims on behalf of other individuals). However, to the extent that plaintiff is making his own due process claim, the claim must also fail. In *Sandin v. Conner,* the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."*Sandin v. Conner,* 515 U.S. 472, 483–84 (1995).

**\*15** In this case, plaintiff is complaining ***only*** about the loss of privileges. Plaintiff has **not** alleged that any atypical and significant hardship was imposed upon him. *Sandin,* 515 U.S. at 483–84. Plaintiff does **not** claim that the loss of the warming stove privilege or that the inability to take bread out of the mess hall was harmful to his health. [27] There is simply nothing "atypical" or "significant" that would create the right to any particular process prior to losing these privileges.

To the extent that plaintiff uses the word "retaliation," he does not state a constitutional claim. In order to state a constitutional claim, a plaintiff must allege that the defendants retaliated against plaintiff for the exercise of a constitutional right. In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citing *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997)). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002)).

In this case, plaintiff claims that the privileges were initially revoked "in retaliation" for someone leaving a substance on the doorknob. (Compl.¶ 60). Defendants' alleged "retaliation" had nothing to do with plaintiff exercising a constitutional

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

right. Thus, plaintiff's claim of denial of privileges must be dismissed.

### 9. *Harassment*

Plaintiff alleges that he has been subject to several different kinds of harassment by a number of corrections officers, and that some of the defendants have engaged in a conspiracy to harass plaintiff. These behaviors include the following allegations:

1. Defendant Neuwirth told plaintiff that he was "going to have a hard time [at Wallkill]," and wrote a false misbehavior report against plaintiff in conjunction with plaintiff's complaint about being assigned to a double cell. (Compl. at ¶¶ 40–41).

2. Defendant Heal illegally escorted plaintiff from the mess hall, and searched plaintiff in front of at least twenty other prisoners, in retaliation for plaintiff's filing of grievances against defendant Heal's co-workers. (Compl. at ¶¶ 73–74).

3. On May 21, 2008, while performing the "evening count," Defendants Heal and Dunham, "stopped in front of plaintiff's room, stood there for 30 seconds looking into the room, while writing on a clipboard."(Compl. at ¶ 79). Defendant Dunham then accused plaintiff of harassment, and defendant Heal wrote an allegedly false misbehavior report regarding the incident that was "affirmed" after a disciplinary hearing conducted by defendant Galbally.(*Id* . at ¶¶ 82, 86–87).

**\*16** 4. Defendant Curfman told plaintiff to pull his pants up, causing defendant Heal and other officers to laugh at plaintiff. (Compl. at ¶ 89).

5. Defendants Roy and Amado failed to prevent the harassment. (Compl. at ¶ 90).

6. Defendant Curfman instituted a policy prohibiting inmates from taking bread out of the mess hall. (Compl. at ¶ 91).

7. Defendant Chenneham bumped into plaintiff. (Compl. at ¶ 94).

8. Defendant Valuc told defendant Scott that plaintiff had his feet on the wall during a telephone conversation, and suggested that defendant Scott should have plaintiff paint the wall as punishment. (Compl. at ¶ 95).

### A. *Verbal Harassment*

To the extent that plaintiff alleges that defendants verbally harassed him, whether by threatening to file a Misbehavior Report or suggesting that plaintiff should paint the walls, the claims should be dismissed. Verbal harassment and name-calling, absent "appreciable injury," simply are not constitutional violations cognizable under Section 1983. *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Vega v. Artus,* 610 F.Supp.2d 185, 209 (N.D.N.Y., Mar. 26, 2009).

In his response to defendants' motion to dismiss, plaintiff claims that defendants violated various New York State statutes; regulations; and the DOCS Employee Manual. (Dkt. No. 46). Even if defendants had violated New York law or the DOCS Employee Manual prohibiting verbal harassment, the violation of state law, absent a constitutional violation, is not actionable under section 1983.[28] *Salahuddin v. Coughlin,* 781 F.2d 24, 27 n. 4 (2d Cir.1986).

### B. *Retaliation*

Plaintiff alleges throughout his complaint that defendants retaliated against him for filing grievances. As stated above, in order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord,* 343 F.3d at 137.

The court in *Dawes* stated that in order to survive summary dismissal, the plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at
> issue was protected, (2) that the
> defendant took adverse action against
> the plaintiff, and (3) that there was
> a causal connection between the
> protected speech [or conduct] and the
> adverse action.

239 F.3d at 492 (citations omitted). Subsequent Second Circuit cases have held that, in a prison context, all that is required is that the adverse conduct by defendant would have deterred a similarly situated individual of ordinary firmness from exercising his First Amendment rights. *See Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004). In *Gill,* the court held that this objective test applied, even

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

where a particular plaintiff was **not subjectively deterred** and continued to file grievances and lawsuits. *Id.*

**\*17** The filing of grievances is constitutionally protected conduct.*Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Thus, the court will assume that plaintiff engaged in "constitutionally protected conduct." As to the second element of retaliation, plaintiff has not alleged a single instance of the kind of "adverse action" that would deter a similarly situated inmate from exercising his constitutional rights. Most of the "retaliation" that plaintiff alleges is verbal harassment. Plaintiff described the harassment as being "lambast[ed] ... with a barrage of threatening, reckless eyeballing and hostile/profane language/jester [sic]." Plaintiff generally alleges that defendants were "mean" to him, that they "eyeball[ed]" him, and even that these conducts constituted "terrorizing conduct." These are not the kinds of unconstitutional "adverse actions" that would make up a retaliation claim.

Contrary to plaintiff's claim that the allegedly "false" misbehavior report written by defendants Heal and Dunham was "affirmed" by defendant Galbally, it is clear from plaintiff's own exhibits that defendant Galbally found plaintiff "not guilty" of two of the charges and only sentenced plaintiff to a seven day work detail. (Compl. *Exhibits* at 42–43). This is not the type of "adverse action" that would deter a similarly situated individual from asserting his rights. Plaintiff makes passing reference to one instance where defendant Chenneham "physically bumped into" plaintiff. (Compl. at ¶ 94). Plaintiff alleges no injury or any adverse consequences whatsoever from the incident. It is unclear how plaintiff claims that this "bump" would have deterred him from asserting his rights. Thus, plaintiff's "retaliation" claims may be dismissed.

### 10. *Grievances*

Plaintiff's eighth claim is that defendants, defendant Superintendent Rivera in particular, "willfully pervert[ed] state statute [sic] governing Inmate Grievance Program, by unlawfully suppressing all grievances submitted to him by plaintiff."(Compl. at ¶ 98). Plaintiff alleges that defendants Rivera, Henn, and CORC were engaged in a conspiracy to deprive him of his right to grieve his complaints. *Id.* at ¶ 101.

The law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly. *Torres v. Mazzuca,*

246 F.Supp.2d 334, 342 (S.D.N.Y.2003). A violation of the inmate grievance procedures does **not** give rise to a claim under section 1983. *Cancel v. Goord,* No. 00–Civ.2042, 2001 U.S. Dist. LEXIS 3440 (S.D.N.Y. Mar. 29, 2001). A claim that defendants improperly or inadequately investigated plaintiff's grievance is not actionable. *See Davis v. Buffardi,* No. 0:01–CV–0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at \*3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right") (citations omitted); *Shell v. Brzeniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005) ( "[i]nmate grievance programs created by state law are not required by the Constitution") (citations omitted); *Cancel v. Goord,* No. 00. CIV.2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713, at \*3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983") (citations omitted).

**\*18** Because there is no constitutional right to the Inmate Grievance Program, there can be no constitutional violation for officials' alleged failure to abide by the proper procedures. Plaintiff alleges that because of defendants' alleged "suppression" of his grievances, he submitted all of his "grievances" to the CORC. (Compl.¶ 98). Plaintiff then complains that the CORC rejected these grievances and returning them to plaintiff and to defendants Rivera and Henn. *Id.* Rejection of plaintiff's attempt at sending all of his grievances directly to the CORC is perfectly reasonable. The CORC is the final appeal for grievances that have been denied at the Superintendent's level.N.Y. COMP.CODES R. & REGS., tit. 7 § 701.5(d).

The court also notes that a review of plaintiff's exhibits shows that plaintiff's letters and "grievances" were not all "suppressed." Plaintiff received a response to his mail claims and his double bunking claims. (*Exhibits* at 7, 9–10 (mail), 20–25 (double bunking)). Of the letters that plaintiff labels "GRIEVANCE," many appear to have been sent directly to defendant Rivera or Deputy Superintendent Amado. (*Exhibits* at 20–25; 32–33; 34; 35–37; 40; 44–46; 48–49). The grievance regulations in New York require that "grievances" submitted first to the Inmate Grievance Resolution Committee (IGRC).N.Y. COMP.CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC is then appealed to the Superintendent. *Id.*§ 701.5(c).

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

By submitting claims directly to the Superintendent, the Deputy Superintendent or the CORC, plaintiff was not using the grievance procedure properly and appears to have been attempting to bypass the required steps. Thus, plaintiff cannot claim that defendants were "suppressing" his grievances. Thus, his claims that his grievances were somehow "suppressed," or that defendants engaged in a conspiracy [29] to prevent plaintiff from availing himself of the Inmate Grievance Program should be dismissed.

**WHEREFORE** it is hereby

**RECOMMENDED,** that defendant's motion to dismiss (Dkt. No. 41) be **GRANTED,** and the complaint dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Footnotes

1    These statutes are criminal in nature, and there is no private right of action to enforce federal criminal laws. *See Dugar v. Coughlin* 613 F.Supp. 849, 852 n. 1 (S.D.N.Y.1985).

2    Because plaintiff is no longer incarcerated, any claims for injunctive relief may be dismissed as moot. *See Pugh v. Goord,* 571 F.Supp.2d 477, 489–90 (S.D.N.Y.2008) (where an inmate has been released from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot).

3    When filing the complaint on the court's electronic filing system, the Clerk divided the Complaint into two parts. On the docket, the first part is entitled "Main Document" and includes the first two sections of plaintiff's Complaint as described above. These sections are consecutive numbered paragraphs 1–159. On the docket, the second part is entitled "Statement of Facts" and includes the third 52–page section of plaintiff's Complaint as described above. While the first page is titled "Statement of Facts," the document appears to be a grievance. Plaintiff also includes a variety of other documents. For ease, the court will refer to this as the Exhibits. The court has numbered the pages consecutively for citation purposes.

4    George Jessen is listed in the caption of the Complaint, and is mentioned several times in the Complaint. However, it appears that Mr. Jessen was not listed on the docket in the list of defendants. Furthermore, no attempt was made to serve defendant Jessen.

5    Plaintiff did not include information about what day of the week he submitted his mail to the Mail Clerk. The court was able to reconstruct that information based on a calendar.

| Date Submitted by Plaintiff/Day | Type of Correspondence | Date Submitted to U.S.P.S./Day |
|---|---|---|
| April 28, 2008/Mon. | Legal | May 2, 2008/Fri. |
| May 29, 2008/Thurs. | Legal | June 2, 2008/Mon. |
| June 5, 2008/Thurs. | Legal | June 9, 2008/Mon. |
| June 8, 2008/Sun. | Legal | June 12, 2008/Thurs. |
| June 19, 2008/Thurs. | Legal | June 23, 2008/Mon. |
| July 3, 2008/Thurs. | Legal | July 7, 2008/Mon. |
| July 3, 2008/Thurs. | Legal | July 10, 2008/Thurs. |
| July 15, 2008/Tues. | Legal | July 18, 2008/Fri. |

6    Defendant Calender was not served with process. A summons in his name was issued in November 2008 (Dkt. No. 12), but was returned unexecuted in March 2009 (Dkt. No. 42). The docket indicates that service was not attempted a second time.

7    This defendant was also not served with process.

8    Plaintiff also states that on June 25, 2008, he complained about the warming stove privileges to Lieutenant Baker, who is not named as a defendant in this action. (Compl. at ¶ 63). Plaintiff claims that Lieutenant Baker confirmed that it was also his practice to punish the entire population when the guilty individual could not be identified. *Id.* at ¶ 64.

9    This defendant was not served with process. The docket does not indicate when a summons was issued, but the docket shows that as to Mr. Valuc, the summons was returned unexecuted in December 2008 (Dkt. No. 18). The Clerk's Office wrote to plaintiff, and explained that there was no Lt. Valuc employed by Wallkill Correctional Facility. The clerk suggested another possible name of this particular defendant. (Dkt. No. 40). Plaintiff was also provided with an additional USM–285 form in order to effect service on the potential defendant. *Id.* Plaintiff did not respond to the court's letter.

Robinson v. New York State Dept. of Correction Services, Not Reported in F.Supp.2d...

2009 WL 3246818

10    This defendant was not served with process. A summons was issued for this defendant in November 2008. (Dkt. No. 12). The summons was returned unexecuted in December 2008 (Dkt. No. 19). The Clerk's Office wrote to plaintiff, and explained that there was no employee with a last name of "Chenneham" employed at Wallkill Correctional Facility. (Dkt. No. 40). The clerk asked plaintiff if he had any other identifying information about this defendant. *Id* . Plaintiff was also provided with an additional USM–285 form in order to effect service on the potential defendant. *Id.* Plaintiff did not respond to the court's letter.

11    There is no Paragraph 85.

12    Plaintiff wrote "May," but this may have been a typographical error. Plaintiff alleges that the theft took place after August 10, 2008, when plaintiff submitted certain documents to Wallkill's business office that indicated that plaintiff had begun this civil action.

13    As stated above, plaintiff has been released from custody, and therefore, any requests for injunctive relief may be dismissed as moot.*Pugh,* 571 F.Supp.2d at 489–90.

14    It appears that the court issued a summons for the DOCS Central Office Review Committee ("CORC"). (Dkt. No. 12). The CORC is a Committee within DOCS, it is neither an agency of the state, nor is it a "branch" of an agency. Thus, the CORC is not an entity that can be served. The court agrees with defendants that even if service on CORC had been somehow effected, plaintiff's claims against CORC would be barred by the Eleventh Amendment.

15    Understandably, the moving defendants did not include the unserved defendants in their motion. However, the arguments made by the moving defendants also justify dismissal as to the unserved defendants. Thus, although the court recommends dismissal against these defendants for failure to serve, the court also finds that it would have recommended dismissal as against these defendants in any event.

16    Generally, when the issue involves only censorship or tampering with legal mail as opposed to an alleged denial of access to courts, the inmate alleges that the defendants either read his mail, censored his mail, or otherwise interfered with the mail. *Davis, supra.*Outgoing mail, whether legal or personal is entitled to greater protection from review or censorship because of the lesser security concerns presented. *Id.* at 532 (citing *Thornburgh,* 490 U.S. at 413).

17    Directive 4421 is a copy of the New York State Regulations governing correctional services. N.Y. CODE RULES & REGS. (N.Y.CRR), tit. 7 §§ 721.1–.3.

18    The information contained in Directive 4422 is also contained in 7 NYCRR §§ 720.2–720.8.

19    The court would note that in order to utilize the IAS–2708 Form to obtain an advance of funds, the inmate must meet additional conditions that are specified in the Directive. DOCS Directive No. 4421 § 721.3(a)(3)(iv)(a)-(c).

20    Directive No. 2788 provides the procedure for collection and repayment of money due from inmates as the result of advances or other obligations. Directive No. 2788(III). This Directive has specific sections that relate to postage. *Id.* Directive No. 2788(III)(A)(1)-(3).

21    The court would simply point out that non-prisoners must often wait for accounts to clear prior to banks disbursing funds.

22    Plaintiff alleges that DOCS had a policy whereby all mail was to be processed by "the next day," however, he cites no statutory or regulatory basis for this requirement. Even if DOCS had a policy that encouraged the immediate processing of an inmate's mail, the violation of a DOCS policy would not necessarily violate plaintiff's constitutional rights. *See Salahuddin v. Coughlin,* 781 F.2d 24, 27 n. 4 (2d Cir.1986) ( "[e]very violation of state law is not necessarily a denial of constitutional right").

23    The longest delay alleged by plaintiff was seven days. Compl. ¶ 32. Most of the delays were four days, one was three days, and one was six days. *Id.*

24    It is unclear what plaintiff means when he states that Wallkill was issued a "variance," however, because this is a motion to dismiss, the court assumes the truth of plaintiff's statement for purposes of this report.

25    Double-celling involves housing two inmates in a cell that was originally designed for one person. *Jones v. Goord,* 435 F.Supp.2d 221, 227 (S.D.N.Y.2006).

26    The court must also note that plaintiff cites the incorrect section of the NYCRR. Plaintiff cites the text of a section governing double occupancy housing units originally designated for "double occupancy" and argues that by converting single occupancy cells to double occupancy, Wallkill violated this regulation. *See*9 NYCRR § 7621.6–b. The regulations do, however, also provide for "Double occupancy housing units originally designated for *individual occupancy.*"*Id.* § 7621.6–a. The regulations contain a formula for maximum facility capacity and provide for an application to the SCOC if a change in maximum facility capacity becomes necessary. 9 NYCRR §§ 7621.10, 7621.11. Thus, the conversion of which plaintiff complains is authorized by the regulations, and the variance is not "void" on its face.

27    Plaintiff also does not state a separate Eighth Amendment claim with respect to this denial of privileges. He does not claim that the conditions of confinement due to the deprivation of these privileges resulted in an "unquestioned and serious deprivation of basic human needs."*See Jolly v. Coughlin,* 76 F.3d at 480. Plaintiff does claim that by punishing the entire block, defendants were "endangering the security of the facility."(Compl.¶¶ 64–65). Plaintiff appears to claim that defendants were endangering the security of the facility because defendants' actions would pressure the inmates to determine who was the guilty party, fostering unrest among the inmates. *Id.* ¶ 61.However, plaintiff is speculating about this claimed result of defendants' actions. Nowhere does he claim that there was ever an incident of inmate unrest due to defendants' actions.

28    The court also notes that where the plaintiff lacks a valid federal claim, a district court has the discretion to decline to exercise supplemental jurisdiction over any pendent state law claims. *Matican v. City of New York,* 524 F.3d 151, 154–55 (2d Cir.1008).

29    Plaintiff sprinkles the entire complaint with allegations of "conspiracy." He alleges conspiracy under both section 1983 and 1985. The relevant part of section 1985 provides a narrower protection that section 1983. Section 1985(3) prohibits conspiracies to deprive persons of equal protection of the law. *Davila v. Secure Pharm. Plus,* 329 F.Supp.2d 311, 316 (D.Conn.2004) (citing 28 U.S.C. § 1985(3).Section 1986 provides that every person who is aware of a conspiracy under section 1985, but does not prevent or aid in preventing the injury, while having the power to do so will be liable in damages. 28 U.S.C. § 1986. A claim under section 1986 is contingent to a valid claim under section 1985 and must be commenced within one year after the cause of action accrued. *Id.*

The protection afforded by section 1985 is "narrower" than that afforded by section 1983 because section 1985 requires the conspiracy to be motivated by a racial or other class-based animus. *Davila,* 329 F.Supp.2d at 317. In order to state a claim under section 1985(3), Plaintiff must allege a conspiracy for the purpose of depriving him of equal protection; an overt act in furtherance of that conspiracy; and an injury to plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Id.* (citing *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999)). Mere conclusory allegations of conspiracy are also insufficient to state a claim under either section 1983 or 1985.*Id. See also Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) ( section 1983). Plaintiff's claims of conspiracy in this case are completely conclusory and cannot survive the motion to dismiss.

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext® © 2014 Thomson Reuters. No claim to original U.S. Government Works.    15